No. 35,607

In re Estate of G. F. Grattan, Deceased (BETHEL COLLEGE, of Newton; McPHERSON COLLEGE, of McPherson; BETHANY COLLEGE, of Lindsborg; JAY CRUMPACKER, as Executor of the Last Will and Testament of G. F. Grattan, Deceased, *Appellees,* v. ERNST F. PIHLBLAD, *Appellant*).

(130 P. 2d 580)

Opinion filed November 7, 1942.

*George R. Lehmberg,* of McPherson, and *Samuel E. Bartlett,* of Wichita, argued the cause, and *J. R. Rhoades,* of McPherson, and *George B. Powers,* of Wichita, were on the briefs for the appellant.

*James A. Cassler,* of McPherson, and *E. R. Sloan,* of Topeka, argued the cause, and *L. H. Ruppenthal* and *Paul A. Lackie,* both of McPherson, and *W. Glenn Hamilton, Floyd A. Sloan* and *Eldon R. Sloan,* all of Topeka, were on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, J.: A testator in his will named appellant to act as executor, expressed the hope he would accept and not resign, but if otherwise he named another person to be his executor. The probate court, upon the record noted herein, refused to appoint appellant and appointed the other person named. On appeal to the district court the rulings in the probate court were affirmed. Appellant contends these judgments were erroneous.

The record may be summarized or quoted from as follows: On September 4, 1941, there was filed in the office of the probate court of McPherson county the petition of Bernardine Grattan and Ernst F. Pihlblad for the probate of the last will and testament and three nuncupative codicils thereto of G. F. Grattan, deceased, and for letters testamentary. This petition alleged that Bernardine Grattan resides at 120 South Maple street in McPherson and Ernst F. Pihlblad in Lindsborg; that G. F. Grattan, a resident of McPherson county and a citizen of the United States, died August 30, 1941, survived by Bernardine Grattan, his niece and sole heir;

"That said decedent left a last will and testament dated August 9, 1941; that said decedent in his last sickness made three nuncupative wills which are in fact codicils to the aforesaid will, on August 27, 1941, and which were reduced to writing and subscribed by two competent and disinterested witnesses on September 3, 1941; and that said will and said three nuncupative codicils thereto are filed herewith and hereby presented for probate. That said will and said three nuncupative codicils thereto are genuine and valid; that said decedent was of sound mind and not under any restraint at the time of the making of the same, and that said will and said three nuncupative codicils thereto are entitled to probate."

The petition named the heir and beneficiaries of the will, estimated the value of the property of decedent to be $150,000, and alleged:

"That in said will said decedent named the petitioner Ernst F. Pihlblad as executor thereof; that in the first nuncupative codicil said decedent named the petitioner Bernardine Grattan as the executor thereof, but under the statute the same is valid only in respect to personal property; that each of the petitioners is willing to accept and undertake the trust confined [confided] to him and her by said decedent; that each of the petitioners is a proper and suitable person to whom to grant letters testamentary; that the appointment of executors is necessary for the conservation, collection, and administration of said property according to law and the will and codicils of the decedent, and that it is for the best interests of said estate and all persons concerned that both of the petitioners be appointed as coexecutors of the will and codicils of said decedent and letters testamentary be granted and issued to them as coexecutors."

The prayer was that the will and the three nuncupative codicils thereto be admitted to probate; that both of the petitioners be appointed as coexecutors, and that letters testamentary be granted to them as such. The will filed with the petition, after formal parts, stated:

"My last blood relative, Martha Grattan-Sigler a widow died in Feb. 1941 childless excepting children of her foster son . . ." Past financial benefits to these people are referred to and their kindness remembered, but no devise or bequest is made to them.

"If Bernardine Grattan the daughter of my brother John M. Grattan, survives me and the probate hereof I give and bequeath and devise unto her all of my undivided one half" of certain real property which the testator and his brother had owned together, and the executor was charged with the duty of paying taxes upon that property for the year of his death and during the administration of the estate.

"If Bernardine Grattan shall not so survive as above set forth, then the bequests and devises are void and pass into the rest and residue."

Provision is made that the federal estate tax and the state inheritance tax should be paid from the residue.

"The duties of the executor are neither exacting nor burdensome—they ought not be delayed; I nominate and appoint Ernst F. Pihlblad executor hereof, and hope his acceptance and no resignation, but if otherwise I nominate and appoint Jay Crumpacker of McPherson, executor. Bonds of either waived unless required by statute. I give the executor or the successor, and to any one acting as such all power and authority needed or required, and this power is without exception."

The will recited:

"I have lawfully distributed much property and hope hereafter to distribute much more."

That as soon as the federal and state taxes were paid:

"I give and bequeath and devise subject to all of the above and foregoing unto the McPherson College of McPherson, Kansas, and unto the Bethany College of Lindsborg, Kansas, and unto the Bethel College of Newton, Kansas, all of the net residue and remainder and undivided one-third in and to such said net residue and remainder to each of them and to their successors and assigns forever to create additional endowment fund for each said above named colleges and to be used exclusively for educational and scientific purposes and not for profit or gain. In the event there be any lien or liens upon said net residue and remainder each said college shall pay the one-third thereof and clear all the same from such lien or liens before they may enter into possession thereof. Each said college is organized and existing under and

by virtue of laws of the state of Kansas. Each said college shall not in any wise defeat said endowment funds aforesaid. Each said college aforesaid were in the community where I earned said properties and they and their friends and acquaintances greatly aided me to so attain from the early years of my life.

"This entire instrument is drafted and typed by myself without the aid of any human being. I have given to other colleges and to the churches who might seem to have any claim upon me or my property and I have discharged any duty on my part.

"I hope, if I have a right to do so, that the courts will sustain all this will, and speedily at an early date make early distribution and close the estate."

The form of the will indicates due execution.

Also filed with the petition were the three following instruments:

"NUNCUPATIVE WILL OF G. F. GRATTAN

"State of Kansas, County of McPherson, ss:

"I, J. R. Rhoades, a resident of McPherson, Kansas, do hereby certify that on August 27, 1941, at about 8 o'clock p. m. a telephone call came to my office from Bernadine Grattan saying that Uncle Frank wanted to see me, and that I should come down right away, and I immediately went to the home of Mrs. Leaetta Grattan at 120 South Maple Street, McPherson, Kansas, and when I arrived there I found G. F. Grattan in bed and also present were Martha M. Kaufman, a nurse, Mrs. Leaetta Grattan, and Bernadine Grattan; and I, Martha M. Kaufman, of McPherson, Kansas, do hereby certify that at the aforesaid time and place I was the nurse attending Mr. G. F. Grattan; and I, Leaetta Grattan, of McPherson, Kansas, do hereby certify that at the aforesaid time and place I was in my home as aforesaid and attending Mr. G. F. Grattan.

"And we, the undersigned, do hereby certify that at the aforesaid time and place, the said G. F. Grattan, being in his last sickness, in the presence of the undersigned, and after calling upon the undersigned to bear witness thereof, did state and declare that he had made his last will and testament, that Bernadine Grattan knew where the same had been placed, and that he now desired to make a nuncupative will to be taken as a part of the same and disposing of part of his personal property.

"He did further state and declare as follows:

'I have given Bernadine Grattan $2,033 in money, and it is my will that she have the same.'

'I give Bernadine Grattan, my brother John's only child, my bonds, there are $24,000 and $25,000.'

'I have given Bernadine Grattan my keys and she is to take charge of and have the management of my estate. I have ample and sufficient money to pay all taxes and same are to be paid therefrom.'

'You, J. R. Rhoades, are to be the attorney for my estate and are to have reasonable and just compensation for my services, but the same is to be taken out of the other real estate and not the real estate which I own with my brother John and have willed to Bernadine Grattan.'

"And we, the undersigned, do hereby further certify that at the time the foregoing testamentary words were spoken by the said G. F. Grattan he was in his last sickness, of sound mind and memory, and not under any restraint, and that he called upon the undersigned, who were then present and in the presence of each other, to bear testimony to said disposition as his nuncupative will.

"Reduced to writing and subscribed by us as witnesses this 3d day of September, 1941.

"J. R. RHOADES,
MARTHA M. KAUFMAN, R. N.,
MRS. LEAETTA GRATTAN."

"SECOND NUNCUPATIVE WILL OF G. F. GRATTAN

"State of Kansas, County of McPherson, ss:

"On August 27, 1941, at about 9 o'clock p. m., G. F. Grattan, being in his last sickness, at the home of Mrs. Leaetta Grattan at 120 South Maple street, McPherson, Kansas, in the presence of the undersigned witnesses, did make a nuncupative will to be taken as a part of his will, and disposing of part of his personal property, as follows:

'I want her (pointing to Mrs. Leaetta Grattan) to have $5,000. In my pants pocket you will find a diamond ring. I want her to have that. At the office in my wallet there are some big bills that amount to $100. I want her to have that. I have $65 more. I want her to have that. I want her to have the lawn mower in the basement.'

"At the time that the foregoing testamentary words were spoken the said G. F. Grattan was of sound mind and memory and not under any restraint, and he called upon the undersigned who were then present and in the presence of each other to bear testimony of his disposition thereby made of a part of his personal property.

"Reduced to writing and subscribed by us as witnesses this 3d day of September, 1941.

"MARTHA M. KAUFMAN, R. N.
BERNARDINE GRATTAN."

"THIRD NUNCUPATIVE WILL OF G. F. GRATTAN

"State of Kansas, County of McPherson, ss:

"On August 27, 1941, at about 9 o'clock p. m., G. F. Grattan, being in his last sickness, at the home of Mrs. Leaetta Grattan at 120 South Maple street, McPherson, Kansas, in the presence of the undersigned witnesses, did make a nuncupative will to be taken as a part of his will, and disposing of part of his personal property, as follows:

'I want her, Bernadine (pointing to Bernadine Grattan) to have $5,000 in addition to the $5,000 she receives under my will.'

"At the time that the foregoing testamentary words were spoken the said G. F. Grattan was of sound mind and memory and not under any restraint, and he called upon the undersigned who were then present and in the presence of each other to bear testimony of his disposition thereby made of a part of his personal property.

"Reduced to writing and subscribed by us as witnesses this 3d day of September, 1941.

"MARTHA M. KAUFMAN, R. N.
MRS. LEAETTA GRATTAN."

September 26, 1941, was fixed for the hearing of the petition, and due notice was given to all interested parties. On September 25, 1941, the three colleges named as beneficiaries of the residuary estate in the will of August 9, 1941, filed an answer to the petition in which they alleged that the instrument dated August 9, 1941, is the last will and testament of G. F. Grattan, deceased; that it was duly executed on that date when the testator was of full age, of sound mind and not under any restraint, and that the same should be admitted to probate; that the three instruments purporting to be nuncupative wills were invalid for reasons stated and were not entitled to probate, and that Jay Crumpacker of McPherson, named in the will of deceased as executor, is a proper person to act as such, and prayed that the instrument of August 9, 1941, be admitted to probate and that letters testamentary be issued to Jay Crumpacker as executor thereof, and that the purported nuncupative wills be declared invalid and not entitled to probate. On September 26, the petitioners appeared in person and by their attorneys, Johnson, Rhoades & Lehmberg; Bernardine Grattan and Leaetta Grattan appeared by W. D. P. Carey, their attorney, and the three colleges appeared by their respective presidents and by E. R. Sloan, James H. Cassler and L. H. Ruppenthal, their attorneys. Bernardine Grattan and Leaetta Grattan made an oral application for a continuance of the hearing to October 27, 1941, which application was granted, and upon an oral application the court appointed Paul E. Sargent as special administrator and fixed his duties, and also appointed the firm of Johnson, Rhoades & Lehmberg as attorneys for the special administrator. On October 24, 1941, upon the application of the attorneys for Bernardine Grattan and Leaetta Grattan the hearing set for October 27 was continued until November 4, 1941. On November 3, 1941, J. H. Rhoades and George R. Lehmberg (the only active members of the firm of Johnson, Rhoades & Lehmberg) filed in the probate court the following:

"WITHDRAWAL OF ATTORNEYS

"Come now J. R. Rhoades and George R. Lehmberg, attorneys of record for Bernardine Grattan, one of the petitioners in the petition for probate of will and codicils and for letters testamentary in the above entitled matter, and state that they withdraw as attorneys for the said petitioner, Bernardine Grattan."

On the same date and on behalf of Ernst F. Pihlblad they filed a petition in which he stated—

". . . that he withdraws as a petitioner for probate of the alleged three nuncupative wills made on August 27, 1941, and alleged to be codicils to the written will of said decedent made on August 9, 1941, and as a petitioner for the appointment of Bernardine Grattan as a coexecutor and letters testamentary to her.

"Wherefore, said petitioner continues to ask that the written will of said decedent, dated August 9, 1941, be admitted to probate, that the petitioner be appointed as executor of said will, and that letters testamentary be granted and issued to the petitioner, Ernst F. Pihlblad."

On November 4, 1941, Bernardine Grattan, as petitioner, and her attorneys, Williams, Martindell, Carey & Brown, filed a petition and withdrawal from petition for the probate of the will and codicils and for letters testamentary. This recites that she had joined with Ernst F. Pihlblad in the petition for probate filed September 4, 1941, and states—

". . . that at the time she joined in said petition she had not employed counsel to represent and advise her with reference to her rights as sole and only heir at law of G. F. Grattan, deceased, and her rights under the laws of the state of Kansas and her rights under the purported will of G. F. Grattan, deceased, or the three instruments attached to the above mentioned petition as nuncupative wills, and that she was, therefore, not fully advised in respect thereof. . . . that she desires to, and does hereby, withdraw from said petition for the probate of will and codicils and for letters testamentary, filed herein as aforesaid, without prejudice as to future action in respect thereof by your petitioner." . . . and "states to the court that she is entitled to have her name withdrawn and stricken from said petition wherever her name occurs therein, including her signature to, and her verification of, said petition, . . . all without prejudice and with the right reserved to your petitioner to make application for admission to probate of said instruments attached to said petition as nuncupative wills at any time within six months after the death of G. F. Grattan, deceased."

The prayer was in harmony with these allegations. At the hearing on November 4 the court recognized, without disapproval, the petition of Ernst F. Pihlblad, filed November 3, to withdraw as petitioner for the probate of the three instruments designated nuncupative wills and for the appointment of Bernardine Grattan as coexecutor and remaining solely as petitioner for the probate of the will dated August 9, 1941, and for letters testamentary thereon to himself, and of the withdrawal of the attorneys, Rhoades & Lehmberg, on November 3, 1941, as attorneys for the petitioner, Bernardine Grattan, and their authority to remain solely as attorneys for the petitioner, Ernst F. Pihlblad. Bernardine Grattan and Leaetta Grattan appeared in person and by their attorneys, Williams, Mar-

tindell, Carey & Brown, and the three colleges referred to appeared by their respective presidents and their attorneys, Sloan, Hamilton & Sloan and Cassler & Ruppenthal. The court considered the petition of Bernardine Grattan, filed November 4, to withdraw from the petition for the probate of the will and the three instruments designated nuncupative wills and granted the petition, "but that part of said petition pertaining to the withholding or withdrawal of the three instruments designated nuncupative wills for admission to probate is by the court denied." The court found these three instruments, designated nuncupative wills, were in the custody of the court, and ordered that the testimony in respect to them be presented in connection with the testimony of the witnesses to the will "in order that the court may determine whether said instruments should be admitted to probate." Upon consideration of the evidence presented in behalf of the petition of Ernst F. Pihlblad and the cross petition of the residuary legatees for the probate of the will dated August 9, and for letters testamentary thereon, the court found that the instrument was duly executed according to law; that the testator was at the time of sound mind, of legal age, and under no restraint or influence; that the will is valid and genuine, and should be admitted to probate, and made an order admitting it to probate. The court then heard the evidence respecting the three instruments designated nuncupative wills and made an order refusing to admit them to probate. Also a hearing was had upon the petition of Ernst F. Pihlblad and the cross petition of the residuary legatees and devisees for the appointment of an executor, and having heard the evidence and argument of counsel the court on its own motion reserved judgment. Thereupon Bernardine Grattan made oral application to the court for the appointment of herself, as the sole and only heir of decedent, as administratrix with the will annexed. On November 5, 1941, the court, having considered the matter of the appointment of an executor, found "that the application of Ernst F. Pihlblad for such appointment should be refused, that the oral application of Bernardine Grattan, . . . for appointment as administratrix with will annexed, should be refused, and that Jay Crumpacker should be appointed as such executor." An order was made in harmony with these findings.

On November 6, 1941, Mr. Jay Crumpacker duly qualified, and letters testamentary were issued to him. On November 7, 1941, Ernst F. Pihlblad served and filed his notice of appeal to the dis-

trict court from the orders and judgment of the court of November 5, refusing to appoint him and appointing Jay Crumpacker executor of the estate.

In the district court the hearing was had January 16, 1942. The appellant, Ernst F. Pihlblad, appeared in person and by Mr. Lehmberg, of Johnson, Rhoades & Lehmberg, his attorneys, the three colleges appeared by E. R. Sloan and L. H. Ruppenthal, their attorneys, and Jay Crumpacker, as executor, appeared by L. H. Ruppenthal, his attorney. The complete record of the proceedings in the probate court was presented for the court's consideration.

Ernst F. Pihlblad testified in his own behalf that he resides at Lindsborg, where he has lived since he was eleven years of age; that he was now sixty-eight; that he was graduated from Bethany College and received his religious training at Augustana Theological Seminary, has a B. A. degree and a degree which corresponds with a B. D. degree; that he was president of Bethany College from 1904 until June, 1941, and is now president emeritus, and has a church in Saline county; that he was appointed a member of the state board of education, which position he resigned to be elected state senator, serving one term, and later was appointed a member of the state civil service board and is its chairman; that since he was a boy he has known G. F. Grattan, had visited him in his hotel room and his office, and Mr. Grattan had visited the witness at his home; that he did not know Mr. Grattan had made a will, or had named him as executor, until after Mr. Grattan's death; that about September 4, 1941, Mr. Rhoades and Bernardine Grattan came to his home, showed him the written will and the three nuncupative wills, and a petition which had been prepared for the admission of the wills to probate; that the witness signed the petition shown by the record; that in doing so he relied upon Mr. Rhoades, who had been attorney for the college for many years; the witness had come in close contact with him, and naturally depended on him; that witness never had an occasion to use an attorney, had been in district court but once before in any capacity; that he had never been charged or convicted of a crime; that he now is and at all times has been willing to accept the trust imposed upon him by the will and to act as executor; that if he were appointed and it became necessary to bring suit against Bernardine Grattan because of her claims to certain bonds he would file the suit for their possession; that he is willing to perform all the duties imposed upon him by law, and to act as executor; that prior

to November 4, 1941, he gave instructions to file a withdrawal from the petition so that he would appear solely as petitioner for the admission of the written will and of his appointment as executor. He further testified that he had no interest in the estate except to be executor, at Mr. Grattan's request; that he thought he was accepting the trust when he filed the petition in which he alleged there were three nuncupative wills, and that they were genuine and valid; knowing that the claimed noncupative wills disposed of some $50,000 worth of property which under the original will had gone to residuary beneficiaries; that, naturally, he wanted to carry out Mr. Grattan's desires; he didn't know—in fact, the first time he ever heard of the term "nuncupative will" was when Mr. Rhoades used it at his home when Bernardine Grattan was with him; that the witness then understood that Mr. Rhoades was Miss Grattan's attorney; that she was the beneficiary of the nuncupative wills, and with that knowledge signed the petition, thinking that was a part of his trust; that he thought he was carrying out the trust when he asked the court to appoint Bernardine Grattan as coexecutor; that Mr. Rhoades explained it to the witness; that he knew Bernardine's claim under the nuncupative will was not consistent with the written will. "I was desirous of Mr. Grattan's wishes to be carried out. I wasn't thinking of the will; I was thinking of his desires. I didn't know the force of a nuncupative will." That in signing the petition he acted upon the advice of Mr. Rhoades, and since then has been following his advice; that Mr. Rhoades continues to represent the witness, who intends to continue to follow his advice; that on two or three occasions he had specifically asked Mr. Rhoades and Mr. Lehmberg to act as his attorneys.

Mr. J. R. Rhoades was called as a witness for appellant. Counsel for appellees objected to his testimony. The objection was sustained, but for the purpose of making a record he was asked and answered many questions. On motion of appellees his testimony was stricken out and not considered by the court.

Jay Crumpacker was called as a witness for appellees, whereupon it was admitted by appellant's counsel that the witness is a person qualified to act as executor, but not under the circumstances of this case.

"THE COURT: In other words, if Dr. Pihlblad is in fact disqualified, then this gentleman is qualified?

"COUNSEL FOR APPELLANT: Yes. We are not raising any question as to his qualifications."

The court ruled as follows:

"The memorandum decision of the court is that the judgment and decision and order of the probate court of McPherson county is affirmed and that Jay Crumpacker be appointed as executor of the last will and testament of G. F. Grattan, deceased, is affirmed; that the court is of the opinion that under the constitution of Kansas that the probate court, being a court of record, has the inherent power to disregard a nomination by a testator and appoint as executor or as administrator with the will annexed a person whom the probate court finds suitable, the effect of the probate court's refusal to appoint the nominee being that the nominee is unsuitable. The court further finds that in the absence of the showing of an abuse of discretion that it is a matter that should not be inquired into too strongly by other courts, the probate court being the court who has the constitutional and statutory power under the probate code of directing and controlling the acts and conduct of the appointee, and such appointment is a judicial function which may not be controlled by the testator. The nomination of the testator should be considered only as a request for appointment."

On January 17, 1942, the appellant filed a motion for a new trial upon the grounds: *First,* erroneous rulings of the court; *second,* the decision and judgment is in whole or in part contrary to the evidence; *third,* abuse of discretion by the court. This motion was considered by the court and overruled January 23, 1942. Notice of appeal was served and filed March 9, 1942, from the judgment of January 16, 1942, and from the overruling of the motion for a new trial.

We turn now to the legal questions involved. We wish to make it clear that no question is presented to us at this time respecting the validity of any or all of the so-called nuncupative wills, nor respecting the construction of or force to be given to any of them, if valid. Appellant naturally recites and relies strongly on our statute (G. S. 1941 Supp. 59-701), which reads:

"Letters testamentary shall be granted to the executor, if any is named in the will, if he is legally competent and shall accept the trust; otherwise letters of administration shall be granted with the will annexed."

Taken originally from Missouri, this statute, in slightly different wording, always has been a part of our law. (Stat. of Kan. Ter. 1855, ch. 1, § 9; Laws 1859, ch. 2, § 8; Gen. Laws 1862, ch. 91, § 8; Gen. Stat. 1868, ch. 37, §§ 2 and 7; G. S. 1935, 22-302, 22-307.)

We cannot agree with the reason given by the trial court for its holding, namely, "The nomination of the testator should be considered only as a request for appointment." It is much more than that; it is a part of the testator's will. While the right to make a

will is statutory, it is well established as the general rule that one who has the right and capacity to make a will has the right to name from among his acquaintances who are legally competent the person to act as executor of his estate. (See 33 C. J. S. 903; 21 Am. Jur. 404, and authorities there cited.) Some earlier authorities took note of the difference in language used by the testator where it was simply a nomination or a request on the one hand or an appointment on the other; but this distinction appears no longer to be regarded as important, and in any event has no force here, for the testator used the phrase "nominate and appoint."

A difference should be noted in the authority of the court to appoint an executor and its authority to appoint an administrator of an intestate estate. In the appointment of an executor the authority of the court comes from the will and the statute (G. S. 1941 Supp. 59-701); in the appointment of an administrator the authority of the court comes wholly from the statute (G. S. 1941 Supp. 59-705). With respect to the appointment of an administrator our statute (G. S. 1935, 22-312), in effect prior to the enactment of the probate code, designated classes of persons having priority of rights of appointment, and although the imperative word "shall" was used, this court in several cases held the probate court had a measure of discretion with respect to the appointment, governed by the thought of having a competent, well-qualified administrator. (*Brown v. Dunlap*, 70 Kan. 668, 79 Pac. 145.) In the new probate code the former sections of our statutes pertaining to this question were rewritten so as to make more definite, and perhaps enlarge, the discretionary power of the probate court in making the appointment (G. S. 1941 Supp. 59-705). No such enlargement of the discretionary power of the court was made with reference to the appointment of an executor.

We take note of the fact that the old doctrines that an executor derives his sole authority from the will, that he might act if not appointed by the court, or if appointed that he could act under the will without his acts being supervised by the court, and without being required to give bond or to report to the court, or to permit the court to settle his accounts, if the will so provided, have gradually given way, and it is now the settled law of this state that the authority of an executor given by the will can be exercised only in a limited measure prior to his appointment by the court, and his due qualification (G. S. 1941 Supp. 59-704); that he must render his accounts

to the court, and ultimately have them approved by the court. (G. S. 1941 Supp. 59-1201; 59-1401; 59-1501.) There is very little difference under our present law in the manner in which an estate shall be handled by an executor or by an administrator, aside, perhaps, from such provisions in the will as the vesting of title in the executor and giving him specific authority to sell.

Instances may and do arise when the owner of a property desires it to be distributed in harmony with the law of descent, but the condition of the property is such that he thinks a particular person can best administer it, and he makes a will for the sole purpose of naming an executor. He has a perfect right to do that, and the court should carry out his will in that regard, if it is in harmony with our statute (G. S. 1941 Supp. 59-701).

While it is deemed proper to set out the general rules of law above mentioned they are not seriously controverted in the briefs before us. The statute above quoted (G. S. 1941 Supp. 59-701) uses the word "shall" in the imperative sense, that it is the duty of the probate court, when a will is admitted to probate in which the testator has named an executor, to appoint the executor so named if he is legally competent and accepts the trust.

Generally, it is said that one is legally competent to act as executor if he is legally competent to make a will. In 2 Blackstone's Commentaries, 503, it is said:

"An executor is he to whom another man commits by will the execution of that his last will and testament. And all persons are capable of being executors that are capable of making wills, and many others besides; as feme-coverts and infants; . . ."

Under this broad doctrine lack of education, or of business experience, old age, illness, dissolute habits, the conviction of crime not involving moral turpitude, indebtedness to the estate, or the fact that the one named claims property as his own which is disposed of by the will, have been held not to render one legally incompetent to act as an executor. Even though the condition of the person named as executor in the will, or his habits or his relation to the estate or one or more of the beneficiaries to the will, are such that the court with reason might think that the appointment would be an improvident one, many of the authorities say he should be appointed, for if he does not handle the estate properly he can be removed, and in determining whether an executor should be removed the court has discretion. Under the common law about the only

persons who were disqualified to act as executors were imbeciles, or persons adjudged insane, or those who had been convicted of heinous crime. Since the following of this doctrine to its fullest extent at times brought undesirable results, the legislatures of some of the states have enacted statutes more specifically specifying those who may be appointed executors, as New York. (Surrogate's Court Act, § 94.)

In Minnesota. the supreme court, in *In re Estate of Betts,* 185 Minn. 627, 240 N. W. 904, 243 N. W. 58, construing a statute similar to ours, held the statute to be mandatory even though the executor named in the will was a debtor or a creditor of the testator, or had interests hostile to others interested in the estate. Following that decision, the legislature amended the statute so as to provide:

". . . If any executor named in the will is found by the court to be suitable and competent to discharge the trust, he shall be appointed. . . ." (Laws 1935, ch. 72, § 58.)

Since it is important in the administration of an estate to have a competent executor, the courts of some states have taken the view that the section of the statute which authorizes the removal of an executor and clearly gives the court discretion should be read in connection with the statute for the appointment of an executor to the extent that the court may exercise its discretion upon the question of whether the person named in the will is suitable for the trust (*In re Estate of Cachelin,* 124 Neb. 556, 247 N. W. 422, and authorities there cited) ; and some courts have taken the view that the appointment of an executor by the testator should stand unless it is shown that the appointment would not have been made by the testator if he would have had knowledge of the condition existing at the time the court is asked to confirm such appointment. (*In re Estate of Schneider,* 224 Ia. 598, 277 N. W. 567.)

In a note, 95 A. L. R. 828, where many cases are annotated, it is said:

"The rule is well settled that ordinarily courts have no discretion in respect to the issue of letters to the persons nominated in the will, unless such persons are expressly disqualified or such discretion is created by statute; . . ."

Later cases on the same point are: *Estate of Lawrence,* 53 Ariz. 1, 85 P. 2d 45; *In re Workman's Estate,* 151 Ore. 475, 49 P. 2d 1136; *Estate of Svacina,* 239 Wis. 436, 1 N. W. 2d 780; *Robinson v. Robinson,* 178 Md. 623, 16 Atl. 2d 854; *Nonnast v. Northern Trust Co.,* 374 Ill. 248, 29 N. E. 2d 251.

The only specific statutes we have relating to competency of an executor are G. S. 1941 Supp. 59-702, regarding minors; 59-706, requiring residence; and 59-1701, relating to corporations. This court heretofore has not had occasion to pass upon the question of the discretion of a probate court in the appointment of an executor. If other disqualifications are to be added the legislature should do it rather than the court.

Considering our statute (G. S. 1941 Supp. 59-701) in the light of the authorities above discussed, when the testator makes a will in which he names an executor the probate court should appoint the executor so named and is not authorized to exercise any discretion respecting the appointment if the person named as executor in the will is legally competent and will accept the trust.

The well-established general rule is that one is "legally competent" to act as an executor if he is legally competent to make a will; but it appears always to have been the rule that peculiar and abnormal facts disclosed may make it clear that the person designated is not a suitable person. (1 Bartlett's Kansas Probate Law and Practice, § 533, p. 545.)

No one in this case contends that Ernst F. Pihlblad is not legally competent to make a will. In their brief appellees argue that the signing of the petition, hereinbefore set out, for the probate of the will of August 9 and of the three instruments denominated nuncupative wills of August 27, in which it was alleged that all of them were valid instruments and should be admitted to probate, and asking for the appointment of Miss Grattan and himself as coexecutors, which petition was signed upon the advice of Mr. Rhoades, attorney for Miss Grattan, who is now acting as attorney for Doctor Pihlblad, who testified his intention was to continue to follow Mr. Rhoades' advice, is substantial evidence that he is not legally competent. The point is not well taken. Ignorance of law or of legal procedure, when applied to an executor of a will, never has been regarded as constituting legal incompetency; otherwise, laymen as a rule would be excluded from acting as executors. An executor is entitled to have an attorney, and normally is expected to follow the advice of his attorney. The evidence discloses that Doctor Pihlblad has and for many years has had a high standing, not only in his home county but throughout the state, as an educator and theologian. No one attributes any intentional bad motives to him.

One who is named by a testator as the executor of his will is not bound to accept the trust. He may refuse to accept by some in-

strument to that effect filed with the court, by his long delay in asking the court to appoint him, or by his refusal to qualify if appointed; or he may be shown to have declined to accept the trust by acts *in pais*. (See 33 C. J. S. 917-920.) Whether he is legally competent, or whether he has declined to accept the trust, are matters which must be determined by the probate court when called upon to make an appointment. (*State, ex rel., v. Holtcamp,* 267 Mo. 412, 185 S. W. 201.)

It is argued on behalf of appellees that the filing by appellant of the petition above mentioned, and his request that Miss Grattan be appointed coexecutor with him, was an effective and complete renunciation on his part of his right to be appointed sole executor of the will in which he was named as executor; that Doctor Pihlblad's only interest in the matter, and his only duty, was to petition for the probate of the written will of August 9 and for his appointment as sole executor. The court cannot agree with this contention. In that petition Doctor Pihlblad and Miss Grattan specifically alleged "that each of the petitioners is willing to accept and undertake the trust confided to him and her by said decedent." In view of that language we think it impossible to say that the petition as a whole should be construed as a renunciation or a refusal on his part to accept the trust imposed by the will in which he was named executor. It is true the petition might have been framed differently; perhaps it should have been; but even had the petition been limited to the written will of August 9, in fairness to the court and the parties in interest, the petition should have advised the court of the claimed nuncupative wills; perhaps should have set them out and asked the court to determine their validity, and if any of them was found to be valid, the effect upon the written will of August 9.

Even though the signing and filing of that petition might have been construed as a refusal on the part of Doctor Pihlblad to accept the trust imposed upon him by the will of August 9, he withdrew that part of the petition on November 3 before the hearing on November 4. It is the general rule that where an executor named in a will at first refuses to accept the trust he may withdraw that refusal before an executor or an administrator with the will annexed is appointed. (See 33 C. J. S. 919; 21 Am. Jur. 431, and authorities there cited.) As the pleadings stood on November 4, Doctor Pihlblad was not asking for the probate of the instruments denominated

nuncupative wills; neither was he asking that Miss Grattan be appointed as coexecutor.

Counsel for appellees contend that since the probate court had before it for judicial determination the question whether Doctor Pihlblad had refused to accept the trust imposed upon him by the written will of August 9, and also the question whether there had been a good faith withdrawal of that refusal, the court was called upon to exercise its general powers with respect to the hearing of controverted matters, including the appearance and conduct of witnesses and the weighing of their testimony, and if there was any substantial evidence to sustain the ruling of the court, that ruling should not be disturbed. The difficulty with giving force to this contention in this action is that the court is unable to find from the record any substantial competent evidence that Doctor Pihlblad refused to accept the trust imposed upon him by the written will of August 9, or that he had any intention of refusing to do so, and having joined in filing a petition, which might possibly be otherwise construed, effectively made it clear before the hearing upon the petition that he asked only for the probate of the will in which he was named as executor and that he be appointed as executor of the will.

The result is that the reasons given by the district court for its ruling cannot be approved, and we find no substantial evidence in the record which would have authorized or justified the probate court in refusing to appoint Doctor Pihlblad executor. Appellees point out that Mr. Crumpacker also had been named by the testator as a person to be appointed as executor of his will. But the naming of Mr. Crumpacker was clearly in the alternative. The testator first named Doctor Pihlblad as executor and expressed the hope that he would accept and not resign. It was only in the event that Doctor Pihlblad declined to accept, or resigned, that Mr. Crumpacker was to be appointed.

The judgment of the court below is reversed with directions that the appointment of Mr. Crumpacker be set aside and that Ernst F. Pihlblad be appointed executor of the will.

DAWSON, C. J., dissents.

HARVEY, J. (dissenting in part): I dissent only from paragraph 7 of the syllabus and corresponding portion of the opinion.