No. 39,973

In the Matter of the Estate of Isabelle H. Snyder, deceased. ETTA V. LIMBOCKER and CLARENCE E. HULSE, *Appellants*, v. JAMES N. SNYDER, *Appellee*.

(294 P. 2d 197)

Opinion filed February 29, 1956.

*J. A. Dickinson*, of Topeka, argued the cause and *Edward Rooney, David Prager, William W. Dimmitt, Jr.* and *Sam A. Crow*, all of Topeka, were with him on the briefs for the appellants.

*Homer Davis*, of Leavenworth, argued the cause and *Lee Bond*, of Leavenworth, was with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a petition to admit a will to probate. The probate court admitted it. On appeal the district court ordered it admitted. The opponents of the probation have appealed to this court. The proponent cross-appealed from an order of the district

court denying his motion for an emergency order that he might proceed with the administration at once.

The proponent of the will is the son of Charles E. Snyder, deceased. The opponents are Etta V. Limbocker and Clarence Hulse. The will offered for probate is that of Isabelle H. Snyder. Etta V. Limbocker and Clarence Hulse are her only heirs at law. James N. Snyder, the proponent, is the son of Charles E. Snyder. He is not related to Etta or Clarence. Isabelle H. Snyder was the second wife of Charles E. Snyder.

The petition for probate made all the necessary statutory allegations that Etta and Clarence were the sole heirs of Isabelle; that petitioner was her step-son, but a stranger to the blood, and alleged that Isabelle's will was duly executed and it bequeathed all her property to her husband, who was then living, but that he had died since the will was made, and before her death, so that the legacy to him had elapsed; set out that the will was locked up in a certain safety deposit box for which counsel for the heirs at law had the key and that the testatrix in her will had appointed Charles E. Snyder as executor with a proviso that if he failed to qualify, then petitioner, James N. Snyder, was to be appointed without bond and he was a fit and competent person to serve. The will contained the following clause:

"I hereby nominate and appoint my beloved husband Charles E. Snyder, of Leavenworth, Kansas, Executor of this my last will and testament, provided that if he fail to qualify as such Executor, or fail to complete administration of my estate, then I nominate and appoint James N. Snyder, of Leavenworth, Kansas, as Executor of this my last will and testament. I further direct that neither of my said Executors shall be required to furnish bond; that they shall have the power to sell all or any part of my property, whether real, personal or mixed, at public or private sale and on such terms and for such prices as they deem best in their judgment, and all without interference by or order of the probate Court in which this will is probated."

It then devised all of the property of which testatrix was possessed to Charles E. Snyder, the decedent's husband.

When this will was offered for probate, Etta and Clarence filed an answer in which they admitted all the allegations about the making of the will and that all of decedent's property had been bequeathed to Charles, but alleged that the will was wholly revoked by operation of law and was null and void and had lapsed on account of the prior death of the sole legatee and devisee named in it, and further by reason of the incompetency of the testatrix at the time

of the death of Charles E. Snyder, the husband and sole beneficiary, she having been adjudged to be an incompetent person on the 30th day of June, 1953. The answer alleged the circumstances and conditions of decedent's estate; the persons entitled to take the same were in all respects altered and changed by the death of the decedent; that the obvious intent of decedent was to confide the execution of the will to her husband, her sole beneficiary, or his son, but upon the death of Charles, James entered into and occupied a position both in fact and in law antagonistic to Isabelle H. Snyder and for this reason the intent, purpose and design of the decedent in her will, dated September 4, 1948, was wholly disrupted, altered and changed and the execution of such will if confided to the petitioner would be placed in the control of an executor adversely interested, both individually and in his fiduciary capacity, to the interests of the estate and heirs of the decedent. The answer then stated various particulars in which the petitioner had denied to the guardians of the decedent during her lifetime the lawful possession and enjoyment of assets and property of the decedent and the income therefrom; that he had shown his antagonism to her welfare and the welfare of her heirs at law; that while the will had appointed him executor he was not a fit and competent person by reason of his antagonism and adverse interest and because he was asserting claims to substantially all the assets of Isabelle's estate in opposition to all rights of her estate and in so doing had renounced his right to serve as executor thereof. The will then alleged various other particulars with reference to the purchase of stock and the sale of buildings in which it was alleged the petitioner had not acted fairly with reference to her. The answer then alleged that Fern E. Brunt was a suitable and proper person to act as administrator of the estate, and prayed that he be appointed.

To this answer, the petitioner for the probate of this will, James N. Snyder, filed a motion or judgment on the pleadings for the reason that the answer failed to state a defense as shown on its face.

This motion was sustained. The trial court found the will named Charles, husband of testatrix, as sole executor, with the further provision that if Charles failed to qualify then James was to be appointed without bond; that Charles predeceased Isabelle and, therefore, James had an interest in the probate of the will, was a legally

fit person to serve as executor, and his appointment was necessary for the conservation and administration of the estate and the corporate security bond in the amount of $150,000 had been approved by the probate court and should remain in force.

It was ordered that the will of Isabelle be admitted to probate and James appointed executor and his bond in the amount of $150,000 remain in effect. The motion of James for an emergency order of administration was denied.

The specifications of error are that the trial court erred in sustaining James' motion for judgment on the pleadings, in admitting Isabelle's will to probate, and in appointing James executor. Actually the decisive question is whether James should be appointed executor since when Charles, the sole devisee, died before testatrix, the only provision the will left operative was that about the appointment of an executor.

Appellants argue the first proposition is that under the facts and circumstances disclosed by the record the appellee is not "legally competent" to serve as executor and is estopped to accept such fiduciary position by his acceptance of adverse fiduciary capacities and his adverse personal interest thereof renouncing his right to serve as executor.

The pertinent statute is G. S. 1949, 59-701. It provides as follows:

"Letters testamentary shall be granted to the executor, if any is named in the will, if he is legally competent and shall accept the trust; otherwise letters of administration shall be granted with the will annexed."

It will be noted the above statute by its terms makes it mandatory the executor named in the will be appointed "if he is legally competent and shall accept the trust."

This will provided for the appointment of Charles and further that if he should fail to qualify or fail to complete administration then his son James should be appointed. Here, since Charles had passed on before his wife, the testatrix, it is clear the condition of his failure to qualify was met. The provision of the will appointing James is just as clear as it was for Charles in the first place.

Appellants first point out a statement in our opinion in *In re Estate of Grattan*, 155 Kan. 839, 130 P. 2d 580. There we said, in considering a question analogous to this:

"The well-established general rule is that one is 'legally competent' to act as an executor if he is legally competent to make a will; but it appears always to have been the rule that peculiar and abnormal facts disclosed may make it

clear that the person designated is not a suitable person. (1 Bartlett's Kansas Probate Law and Practice, § 533, p. 545.)"

They argue that the interests of James set out in their protest are so contrary and antagonistic to the interests of Isabelle's heirs that they constitute "peculiar and abnormal facts," such as to show him to be an unsuitable person. In that connection they also cite *In re Blochowitz Estate,* 124 Nebr. 110, 245 N. W. 440. There the statute was about like ours. The will had directed the appointment of testator's son as executor. The court construed the words "legally competent" in the statute so as to disqualify the son on account of some personal interests he had antagonistic to the estate. In effect the appellants ask us to follow the Blochowitz case.

This court in the Grattan case, *supra,* had this question.

In the Grattan case testator in his will had named an executor. After some proceedings relative to three noncupative wills the probate court refused to appoint the person named in the will and instead appointed a person who had not been named. The person named appealed to the district court.

The district court stated the probate court had the constitutional and statutory power under the probate code of directing and controlling the acts and conduct of the appointee and such appointment was a judicial function which could not be controlled by the testator and the nomination of the testator should be considered only as a request for appointment.

On appeal we referred to G. S. 1949, 59-701, already set out in this opinion. We pointed out the history of the statute and that it had always been a part of our law. We further pointed out that under the modern doctrine that while an executor derived his right to the appointment from the will he must render his accounts to the court and ultimately have them approved by the court. (See G. S. 1949, 59-1201; 59-1401; and 59-1501.)

We said:

"Instances may and do arise when the owner of a property desires it to be distributed in harmony with the law of descent, but the condition of the property is such that he thinks a particular person can best administer it, and he makes a will for the sole purpose of naming an executor. He has a perfect right to do that, and the court should carry out his will in that regard, if it is in harmony with our statute (G. S. 1941 Supp. 59-701.)" (155 Kan. 851.)

We pointed out the rule that one is legally competent to act as executor if he is legally competent to make a will. We then said:

"Under this broad doctrine lack of education, or of business experience,

old age, illness, dissolute habits, the conviction of crime not involving moral turpitude, indebtedness to the estate, or the fact that the one named claims property as his own which is disposed of by the will, have been held not to render one legally incompetent to act as an executor. Even though the condition of the person named as executor in the will, or his habits or his relation to the estate or one or more of the beneficiaries to the will, are such that the court with reason might think that the appointment would be an improvident one, many of the authorities say he should be appointed, for if he does not handle the estate properly he can be removed, and in determining whether an executor should be removed the court has discretion." (155 Kan. 851.)

We then pointed out various authorities not necessary to cite in this opinion to the general effect that ordinarily courts have no discretion in respect to the issue of letters to the persons nominated in the will unless they are expressly disqualified or such discretion is created by statute.

We then pointed out the only statutes we had or have relating to competency of an executor, that is, G. S. 1949, 59-702, regarding minors, 59-706, requiring residence and 59-1701, relating to corporations. We remarked if other disqualifications were to be added the legislature should do it rather than the court.

We then stated:

"The well-established general rule is that one is 'legally competent' to act as an executor if he is legally competent to make a will; but it appears always to have been the rule that peculiar and abnormal facts disclosed may make it clear that the person designated is not a suitable person. (1 Bartlett's Kansas Probate Law and Practice, § 533, p. 545.)" (155 Kan. 853.)

The judgment of the trial court was reversed with directions that the person named in the will be named executor. In the syllabus we held:

"Under our statute (G. S. 1941 Supp. 59-601) one who has capacity and authority to make a will has capacity and authority to name an executor.

"The naming of an executor by a testator in his will should be treated by the courts as a part of his will—much as a devise or a bequest should be treated.

"When a testator in his will names an executor, normally the court has no discretion respecting the appointment, if the executor so named is legally competent and will accept the trust. (G. S. 1941 Supp. 59-701.)"

We have quoted at length from the Grattan opinion because of its remarkably exhaustive treatment of the subject and because it was up until now the only opinion of our court dealing with the subject.

Appellants next point out the statute in question provides the executor named must "accept the trust." They argue, by placing

himself in a position of antagonism against the rights of the deceased and her lawful heirs, he in effect renounced the executorship. They reiterate their arguments on the first question, just considered. The point is not well taken. If at any time it appears during the administration of the estate that James' interests are actually antagonistic to the interests of the estate, then on proper application a special administrator may be appointed. The probate court has discretion in such matters. (See *In re Estate of Grattan,* supra.)

Appellants next argue, Isabelle's will was revoked in effect since by the death of the sole beneficiary it was rendered inoperative. Questions analogous to this were dealt with and decided adversely to the argument of appellants in the Grattan case, *supra.*

The appellee, James, cross-appealed from the judgment of the trial court, denying his motion for an emergency order to proceed at once with the administration of the estate. Since the judgment of the trial court directing the appointment of James is to be affirmed, we find it unnecessary to treat this point.

The judgment of the trial court is as to the appeal and cross-appeal affirmed.

HARVEY, C. J., not participating.

SMITH, J. (dissenting): I find myself unable to concur in the opinion of the majority. Briefly my reasons are, I think the opinion in the Grattan case is not entitled to quite the persuasive force given it by the majority opinion under the circumstances of this case. In the Grattan case there was a full hearing; in this case, a motion for judgment on the pleadings was sustained. I think had there been a hearing on the charges made in the answer to the petition to probate the will there might well have been such a showing of antagonism as would have made it clear James should not be appointed. I doubt the wisdom or justice of denying to the heirs a hearing on such serious charges. The position of executor is one of trust. If the charges leveled at James should have been proven, it seems a shame to place James in such a position.

Throughout the Grattan opinion this court uses the term "legally competent" both in the opinion and in the syllabus. Actually I think the Supreme Court of Nebraska dealt more realistically with the situation in the Blochowitz case than we did in the Grattan

ᵛcase. The author of the opinion in the Grattan case realized there might be "peculiar and abnormal facts" which would show a person nominated to be an unsuitable person. Such facts can never be shown if an answer making such serious charges, as are made here, cannot withstand a motion for judgment on the pleadings. I think these facts are both peculiar and abnormal. It seems to me the Grattan opinion was written with a situation such as this in mind.