No. 41,986

In re Estate of Isabelle H. Snyder, Deceased.  (CLARENCE E. HULSE,
FERN E. BRUNT, and HAZEL V. CAMPBELL, *Appellants*, v. JAMES
N. SNYDER, *Appellee.*)

(360 P. 2d 883)

Opinion filed April 8, 1961.

*Jacob A. Dickinson*, of Topeka, argued the cause, and *Sam A. Crow, Jack C. McCarter, Ralph E. Skoog*, and *Hart Workman*, all of Topeka, were with him on the briefs for the appellants.

*Homer Davis* and *James N. Snyder*, both of Leavenworth, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the judgment, order, and decision of the district court allowing the petition of the appellee, executor, for executor and attorney fees of $6,000 and overruling the appellants' motion for new trial.

Three former appeals have been before this court involving principally either the estate of Charles E. Snyder or the estate of Isabelle H. Snyder, but irrespective of which estate was the subject of the appeal some mention was made of the other estate in determining the appeals.  (*In re Estate of Snyder*, 179 Kan. 252, 294 P. 2d 197; *In re Estate of Snyder*, 181 Kan. 222, 310 P. 2d 944, and *In re Estate of Snyder*, 187 Kan. 373, 357, P. 2d 778.)

On September 4, 1948, Isabelle H. Benedict, a childless widow seventy-six years of age, married Charles E. Snyder, a widower sixty-nine years of age, who had three adult children:  Elmore, James N., and Charles E. Snyder, Jr.

On May 3, 1953, Charles E. Snyder died testate and on June 19, 1954, Isabelle died testate, both in Leavenworth, Kansas.  As was

discussed in the former appeals, wills of both decedents were duly accepted for probate and are now in process of probation. We need not repeat those matters here.

Simultaneous with their marriage, the wills of Isabelle and Charles were executed and consent given, each to the other, where by reason of alternate-executor provisions of the wills, through one certain course of events James N., attorney, would be executor of Isabelle's estate, and Elmore, Bank cashier and later president, would be executor of the estate of Charles E. Snyder.

That certain course of events which started when Charles E. predeceased Isabelle brought about the result above provided for and true to the generally selfish nature of human beings, trouble has been plentiful in this litigation ever since.

Etta V. Limbocker and Clarence Hulse were the sister and half brother, and the only heirs of Isabelle. Etta and Clarence first appeared in the probate proceeding of Isabelle's estate in Etta's petition, as heir, seeking probate of Isabelle's estate and appointment of a special administrator. Their petition was successfully resisted. On petition of James N., Isabelle's will was offered and accepted for probate.

Homer Davis, scrivener of both wills, supervised the execution and witnessing thereof; the record shows that Homer Davis handled the wills of these decedents exclusively and James N. had nothing to do with them; both Homer Davis and Lee Bond had represented James N. as executor of Isabelle's estate after his appointment on March 10, 1955, and until Bond's death in December, 1956. Since that time only Davis has appeared.

On March 1, 1957, by reason of a petition filed by James N., Fern E. Brunt was appointed special administratrix of Isabelle's estate and he also sought to bring into her estate $60,000 of United States Treasury bonds and 166 shares of stock in the Manufacturers State Bank, and other matters.

On July 31, 1956, the probate court allowed James N. $2,000 as partial fee as the executor and allowed a $2,000 partial fee to each of the attorneys, Davis and Bond. On December 1, 1959, on appeal, these fees were approved by the district court, except that Bond's fee was ordered paid to Clara Hebling, as executrix under Bond's will. Fern E. Brunt and Hazel V. Campbell are the administratrices of the estate of Etta and as such make their first appearance in the case in the present notice of appeal.

It will avail·us nothing to extol the ability, rating and qualification of each lawyer that has been or is presently involved herein—either as a party or as an attorney—and no good purpose will be served by repeating the meticulous manner in which these lawyers have demonstrated their ability to present their case. They have become obsessed with their particular client's·theory of the lawsuit. Few, if any, procedural steps have been overlooked or avoided, at least, since the deaths of Lee Bond and Edward Rooney, former senior members of the firms representing the contesting parties.

In affirming the fees allowed by the probate court, the district court, after trial, in its verbal decision on December 1, 1959, made clear its attitude when it, in substance, stated that according to statute practically anyone may serve as executor of an estate; James N. had been appointed as executor of Isabelle's estate and his appointment had been affirmed in the district court and then in the supreme court; the heirs had disputed his right to serve and he had asserted that right; there were conflicting interests between the estates of Isabelle and Charles, and James and his attorneys did what honorable lawyers do—they went into court, pointed out these conflicting. interests, and asked for appointment of a special administrator; the court made such appointment and James and his attorneys stepped aside, as they had a right to do, because of their conflicting interests; no claim for compensation was made for anything they may have done in representing the estate of Charles; they claimed compensation only for services rendered Isabelle's estate; in Leavenworth county services for simple, routine legal work in an ordinary estate, without litigation, generally amounted to six and one half percent for an executor and his attorneys; the evidence showed this estate would equal $100,000 and James and his attorneys were entitled to be paid for the appeals from his appointment as executor; they were also entitled to several thousand dollars for appealing to the supreme court—perhaps fifty or sixty percent of the routine fee; the trial court stated the final fee would be far in excess of $6,500 and found the order of the probate court making the allowance of $6,000 attorney fees was reasonable and made the same allowance. The trial court further stated James and his attorneys· were not guilty of any bad faith or had they attempted to·represent conflicting interests.

The first question presented relates to the correctness of the trial court's allowance of $2,000 to James N., $2,000 to his attorney, Homer Davis, and $2,000 to his attorney Lee Bond.

G. S. 1949, 59-1504, relating to the compensation of an executor of a decedent's estate in part provides:

". . . Whenever any person named in a will or codicil defends it, or prosecutes any proceedings in good faith and with just cause, for the purpose of having it admitted to probate, whether successful or not, or if any person successfully opposes the probate of any will or codicil, he shall be allowed out of the estate his necessary expenses and disbursements in such proceedings, together with such compensation for his services and those of his attorneys as shall be just and proper."

The above statute must be considered along with the ruling on the cross-appeal in *In re Estate of Rooney*, 186 Kan. 200, 203, 349 P. 2d 916, and G. S. 1949, 59-1717 which provides:

"Every fiduciary shall be allowed his necessary expenses incurred in the execution of his trust, and shall have such compensation for his services and those of his attorneys as shall be just and reasonable. At any time during administration the fiduciary may apply to the court for an allowance upon his compensation and upon attorneys' fees."

Since our decision in *In re Estate of Snyder*, 179 Kan. 252, 294 P. 2d 197, settled the question that James N. could accept the decedent's appointment as executor, and in view of the above-quoted statutes and the Rooney case, *supra*, we think the trial court was correct in its allowance of the partial fees to the executor and the two attorneys.

It is difficult to see how appellants, Fern, Hazel, and Clarence, can be heard to complain about James having done so much work as executor of Isabelle's estate when they have been the cause of the appeals following the original allowance of fees by the probate court. We are not impressed with appellants' proposition that James and his attorneys should not be paid for defending Isabelle's will and the appointment of her named executor thereunder when appellants are and have been active opponents of the will.

So far as appellants' argument of "fee-splitting" is concerned, the case of *Watson v. Woodruff*, 154 Kan. 61, 114 P. 2d 864, appears to approach more closely the purported "fee-splitting" contention than does our present case. However, this court held that none of the contracts therein made were trafficking in the estate by any of the three lawyers for their individual advantage, or to the disadvantage

of the beneficiaries under the will, nor were they contrary to public policy. The Watson case was later cited in *Grayson v. Pyles*, 184 Kan. 116, 118, 334 P. 2d 341.

Appellants contend they were erroneously limited in their cross-examination by the trial court upon that court's theory such cross-examination was improper because it went beyond the direct examination and was an attempt to set up defensive matters. Our decisions uphold the correctness of the trial court's ruling. (*State v. Long*, 103 Kan. 302, 175 Pac. 145; 5 Hatcher's Kansas Digest, rev. ed., Witnesses, § 92, p. 531; 9 West's Kansas Digest, part 2, Witnesses, § 269, pp. 422, 423.)

The trial court did not err in any of the particulars complained of or in its judgment affirming the allowance of partial fees made by the probate court.

Judgment affirmed.