No. 47,661

In the Matter of the Estate of R. C. Teichgraeber a/k/a Richard C. Teichgraeber, Deceased. MARIBELLE AICHER, NORMA RUTH HOOVER, and TERESA ANN HAND, *Appellants,* v. LEONA S. TEICHGRAEBER, Widow, and HAROLD G. FORBES, Executor, *Appellees.*

No. 47,662

In the Matter of the Estate of Ruth Teichgraeber, Deceased. MARIBELLE AICHER, NORMA RUTH HOOVER, and TERESA ANN HAND, *Appellants,* v. HAROLD G. FORBES, Executor, and LEONA S. TEICHGRAEBER, *Appellees.*

(537 P. 2d 174)

Opinion filed June 14, 1975.

*Orlin L. Wagner,* of Wichita, argued the cause for the Estate of R. C. Teichgraeber, and *C. C. Whittaker, Jr.,* of Eureka, was with him on the briefs for the appellants.

*Dale L. Pohl,* of Forbes & Pohl, of Eureka, argued the cause, in the Estate of R. C. Teichgraeber, and *Patrick T. Forbes,* of the same firm, was with him on the briefs for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: These consolidated appeals are brought by Maribelle Aicher, Norma Ruth Hoover and Teresa Ann Hand (plaintiffs-appellants), the daughters of Richard C. (R. C.) and Ruth Teichgraeber, from orders of the district court of Greenwood County entered in the respective estates of R. C. Teichgraeber, deceased, and Ruth Teichgraeber, deceased.

The probate court of Greenwood County found there was no real or personal property in Ruth's estate, and after admitting her will to probate, denied issuance of letters testamentary to the executor named in her will. Failure of the appellants to appeal from the order of the probate court denying issuance of letters testamentary to the executor named in Ruth's will within 30 days, pursuant to K. S. A. 1974 Supp. 59-2404, was the basis of subsequent orders

issued by the district court of Greenwood County (1) declaring the appellants' appeal from the order of the probate court admitting Ruth's will to probate moot in Ruth's estate, and (2) sustaining a motion for summary judgment in R. C.'s estate by reason of rulings made in Ruth's estate.

The issue presented concerns the construction of our probate appeal statutes, K. S. A. 1974 Supp. 59-2401 and 59-2404, and K. S. A. 1974 Supp. 59-2287.

A chronological presentation of the facts is necessary for an understanding of the issues on appeal.

Ruth and Richard C. (R. C.) Teichgraeber were husband and wife, living in Eureka, Kansas. They had three daughters, appellants in this action.

On March 1, 1966, Ruth Teichgraeber, 73, made her last will and testament. After providing for payment of her debts, Ruth devised and bequeathed to her husband, R. C., all the rest and residue of her estate. In the event R. C. predeceased Ruth, all the rest and residue was to be divided between appellants, Maribelle Aicher, Norma Ruth Hoover and Teresa Ann Hand, in undivided one-third proportions. R. C. was nominated to be executor, with Ruth's attorney, Harold Forbes, to be alternate executor if R. C. predeceased Ruth. At Ruth's request her last will and testament was placed in the vault of her alternate executor and attorney, Harold G. Forbes.

On August 10, 1972, Ruth died testate. R. C. survived and under Ruth's will R. C. was the sole beneficiary. Ruth's will was not, however, immediately probated. Instead it remained in the safe of her alternate executor and attorney, Harold G. Forbes.

R. C. was not long a widower, marrying Leona S. Teichgraeber early in January 1973.

Shortly after his remarriage, on January 16, 1973, R. C. informed Mr. Forbes, Ruth's attorney and alternate executor, that Ruth had died without owning any property. Mr. Forbes was also informed that probate was unnecessary so the original last will and testament of Ruth Teichgraeber was destroyed. However a copy was retained and it is included in the record.

On the same day, January 16, 1973, R. C. executed a last will and testament revoking all of his former wills. Under the new will, after providing for payment of his debts, R. C. devised and bequeathed all the rest and residue of his estate to his new wife, Leona S. Teichgraeber. If Leona predeceased R. C., the estate was

to be divided in equal portions between six named grandchildren, children of appellants. R. C.'s will provided in clause six:

"In making this, my last will and testament, I am not unmindful of the fact that I have made no provisions for my beloved daughters, Maribelle Aicher, Teresa Ann Hand, and Norma Ruth Hoover, in said will, but during my lifetime I have made substantial gifts to each of my daughters and it is not my desire that any of them share in my estate."

Harold Forbes, also R. C.'s attorney, was nominated executor.

On March 31, 1973, R. C. died testate. Leona, R. C.'s new wife, survived him as the sole beneficiary of his estate under his will. On May 4, 1973, R. C.'s will was admitted to probate. Mr. Forbes was appointed executor and letters testamentary were issued to him.

On May 8, 1973, Mr. Forbes (the named alternate executor in Ruth's March 1, 1966, will after the death of R. C.) petitioned the probate court to probate Ruth's will. Forbes' petition stated:

"To the best knowledge of the petitioner the deceased at the time of her death left no real or personal property, but petitioner is informed that some of the children and next of kin of said deceased maintain that the deceased was the owner of certain real and personal property at the time of her death and for that reason this petition is being filed for the purpose of probating said will. . . ."

The petition for the probate of Ruth's will and for the appointment of Harold Forbes as executor thereof, was set for hearing on June 4, 1973.

On May 10, 1973, notice of hearing on the petition concerning Ruth's will was first published. This notice required written defenses to the probate of Ruth's will and the appointment of Harold Forbes as executor to be filed by June 4, 1973.

On May 10, 1973, notice was first published that Mr. Forbes had been appointed and qualified as executor of R. C.'s estate. All demands not exhibited within six months from the date of the first publication were to be forever barred.

On June 4, 1973, the probate court admitted Ruth's will to probate, but it ordered *"the issuance of Letters Testamentary to the executor named in said will should be denied due to the fact that said deceased was the owner of no real or personal property at the time of her death."* (Emphasis added.) In so ruling the probate court found:

"The court further finds that R. C. Teichgraeber, husband of Ruth Teichgraeber, was named to serve as executor of the last will and testament of Ruth Teichgraeber, or in the event that he was unable to serve, Harold G. Forbes was appointed to serve as executor of said last will and testament. The court

further finds that to the best knowledge and belief of the petitioner Ruth Teichgraeber died owning no real or personal property and that said petitioner has requested that Letters Testamentary be denied. The court further finds that the petition to admit the last will and testament of Ruth Teichgraeber to probate was filed due to the fact that some of the heirs of the said Ruth Teichgraeber maintained that said decedent died owning real or personal property in which they individually were entitled to a share; that hearing of this petition was given to said heirs but said heirs failed to appear or to furnish any evidence that said Ruth Teichgraeber died owning any property. The court further finds that from the evidence introduced the said Ruth Teichgraeber died owning no real or personal property and as a result Letters Testamentary should not be issued. The court further finds that due to the fact that there is no real or personal property in the estate of Ruth Teichgraeber, notice of this order should not be given by publication to the unknown creditors of said deceased."

On November 29, 1973, (five months and twenty-four days after the probate court's order) an appeal was perfected from the probate court's order of June 4, 1973, admitting Ruth's will to probate but denying letters testamentary.

In the meantime, on November 9, 1973, the appellants' filed a petition in the probate court in R. C.'s estate setting forth two claims against R. C.'s estate. In their first claim the appellants allege:

". . . [T]hat the said Ruth Teichgraeber in fact died testate on or about August 10, 1972, leaving a will duly executed and in effect devising and conveying all of her property to petitioners, share and share alike; that said will was duly consented to by the deceased R. C. Teichgraeber; that the deceased caused purported conveyances from the said Ruth Teichgraeber to the above entitled deceased by force, threat, duress and undue influence during the period of time which said Ruth Teichgraeber was incompetent and incapacitated of handling her affairs or understanding the gravity of any business transactions; that the said Ruth Teichgraeber was a literate person but became incompetent and incapacitated to such an extent approximately eight years before her demise that she was unable to write, did not have mental capacity to transact business, make disposition of her property, or fully realize the objects of her bounty.

"That the decedent R. C. Teichgraeber did forcefully motivate and purport conveyances of property from the said Ruth Teichgraeber, including, but not limited to, the following described property: The NE/4, the N/2 of the NW/4, and the N/2 of the S/2 of the NW/4, all in Section 15, Township 25 South, Range 10 East of the 6th P. M., Greenwood County, Kansas, and the NW/4, Section 5, Township 26 South, Range 11 East of the 6th P. M., Greenwood County, Kansas, together with other real property, which property, or the value thereof, is included as a part of the purported estate of R. C. Teichgraeber, deceased; that said decedent wrongfully, willingly, and knowingly violated the provisions of K. S. A. 59-618 with the intent to possess the same as his own rather than as trustee to the detriment of these petitioners."

The appellants in their second claim allege that R. C. Teich-graeber's January 16, 1973, will was executed under duress and undue influence; that R. C. did not make contributions or gifts to appellants as recited in his will; and that R. C. did not have the capacity to recognize his heirs and the objects of his bounty.

On November 27, 1973, the appellees filed objections to the claims of the appellants.

On December 6, 1973, the appellants' claims against R. C.'s estate and the appellees' objections thereto were transferred to the Green-wood County District Court for hearing pursuant to K. S. A. 59-2402a. There the appellees moved for summary judgment against the appellants, and following oral arguments the district court, on March 18, 1974, granted the appellees summary judgment on the second claim, but overruled the motion as to the appellants' first claim.

On the 3rd day of May, 1974, a pretrial conference was held in the district court concerning the appeal in Ruth's estate. After considering the stipulations of counsel, pleadings, contentions, exhibits submitted, and after considering the arguments of counsel presented orally and by letters of May 8 and May 13, the district court entered an order filed June 4, 1974, which recites in pertinent part:

"On the 28th day of May, 1974, this court decided 'that the appeal from the order admitting the will to probate was timely filed; and further that the appeal from the order denying issuance of letters testamentary to the executor named in the will on the grounds that there were no assets, either real or personal, in the estate was not timely filed', all as set forth in a certain written memorandum decision dated May 28, 1974.

"Now on this 4th day of June, 1974, the oral motion of proponents to dismiss the appeal of claimants for the reason that by virtue of the order and ruling of this court made on May 28, 1974, the question of whether said will should or should not have been admitted is a moot question, comes on for hearing, both parties appearing by counsel as before. Said matter is duly argued by counsel for the respective parties, and the court, after listening to said arguments and being fully advised in the premises, finds that since the probate court found on June 4, 1973, that the said Ruth Teichgraeber died owning no real or personal property and denied issuance of letters testamentary said finding and order of the court became binding upon all parties, and as a result the question of whether said will should or should not have been admitted to probate is moot.

"The court further finds that the appeal of contestants should be dismissed. . . .

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED That the appeal from the order admitting the will to probate was timely filed and that the appeal from the order denying the issuance of letters testamentary to the executor

named in the will on the grounds that there were no assets, either real or personal, in the assets was not timely filed.

"IT Is FURTHER ORDERED That since no appeal was properly taken from the order of the probate court made on June 4, 1973, in which said court found that Ruth Teichgraeber died owning no real or personal property and denied issuance of letters testamentary is an order binding on all the parties and as a result the question of whether said will of Ruth Teichgraeber should or should not have been admitted to probate is a moot question."

On June 4, 1974, the district court reconsidered its ruling on the first claim filed in R. C.'s estate, originally overruled because the judge thought the motion should not be considered until there was a final determination made of the claimant's appeal in Ruth's estate. Upon reconsideration the court found final determination had been made in the appeal in Ruth's estate, and it sustained the appellees' motion for summary judgment as it pertained to the first claim of the claimant's petition in R. C.'s estate.

On the 2nd day of July, 1974, appeal was duly perfected to this court in R. C.'s estate from the order of June 4, 1974, sustaining the appellees' motion for summary judgment as to the appellants' first claim; and in Ruth's estate dismissing the appeal from the probate court of Greenwood County. No appeal was taken from the order of the district court sustaining the appellees' motion for summary judgment on the appellants' second claim set forth in the petition filed in R. C.'s estate.

After the appeal in R. C.'s case (No. 47,661) was argued in this court on April 3, 1975, the parties upon request of the court agreed in writing to submit the appeal in Ruth's case (No. 47,662) upon the record and briefs on file in this court and to consolidate the two cases.

The pivotal point upon which the orders of the district court in each estate were based is the failure of the appellants to perfect an appeal from the order of the probate court refusing to grant letters testamentary to Mr. Forbes, the named alternate executor in Ruth's will dated March 1, 1966, within a period of 30 days from the order. Since the order of the probate court dated June 4, 1973, denying issuance of letters testamentary was based upon a finding that Ruth Teichgraeber died owning no real or personal property, the appellees contend the order became final, absent a timely appeal, and the appellants are bound by the finding.

Were the appellants obligated to perfect an appeal within a period of 30 days from the order of the probate court in Ruth's estate, dated June 4, 1973, which denied issuance of letters testa-

mentary, when a valid appeal was perfected by the appellants within the statutory period of six months from the order of the probate court in Ruth's estate, dated June 4, 1973, admitting the will of Ruth, dated March 1, 1966, to probate?

K. S. A. 1974 Supp. 59-2401 authorizes an appeal to the district court from 22 different enumerated orders, judgments, decrees, and decisions of the probate court. Among these are:

"(1) An order admitting, or refusing to admit, a will to probate.

"(2) An order appointing, or refusing to appoint, or removing or refusing to remove, a fiduciary other than a special administrator.

"(22) A final decision of any matter arising under the jurisdiction of the probate court."

The time within which authorized appeals may be taken from the probate court to the district court is specified in K. S. A. 1974 Supp. 59-2404. It provides:

"Such appeal may be taken by any person aggrieved within thirty (30) days after the making of such order, judgment, decree, or decision: *Provided,* That an appeal may be taken within six months from an order admitting, or refusing to admit, a will to probate. The right of appeal shall not be denied nor abridged for failure of the party appealing to present his defenses in the probate court or to appear therein."

Under the foregoing statute the failure of the appellants to appear in the probate court in Ruth's estate and present their defenses to the admission of Ruth's will, dated March 1, 1966, to probate did not affect their right to appeal or present their defenses in the district court.

Once an appeal has been duly perfected, the district court has, and exercises, the same jurisdiction and power as though the controversy had originally been commenced in that court. Pleadings may be filed or amended, and the trial in, and issues to be considered by, the district court are neither abridged nor restricted by any failure to appear, or by the evidence introduced, or the absence or the insufficiency thereof, in the probate court. (K. S. A. 1974 Supp. 59-2408; and *In re Marsolf*, 200 Kan. 128, 434 P. 2d 1010.) An appeal from an order, other than an order admitting a will to probate, suspends the operation of any order, judgment, decree, or decision appealed from until the appeal is determined or the district court shall otherwise order. (K. S. A. 59-2407.) The failure of the statute to suspend the order of the probate court admitting a will to probate does not, however, affect the authority of the

district court to determine the issues on appeal from the probate court *de novo.* (*In re Estate of Barnes*, 212 Kan. 502, 512 P. 2d 387.)

The parties concede the basic question presented on the statutory construction of appeals from the probate court is one of first impression. To avoid misinterpretation of our opinion it must be emphasized the appellees raise no question other than those embraced within the statements of points asserted by the appellants. In Ruth's estate the appellants assert as a statement of points that the trial court erred in:

"1. Finding that timely appeal from Order Admitting Will to Probate is moot because appellants did not appeal within thirty days from matters recited in said order finding no assets in estate and that letters testamentary not issue, which matters were included in said order without notice given.

"2. Failing to determine whether alleged document of March 1, 1966, is admissible to probate as the last will of deceased.

"3. Failing to determine whether deceased had testamentary capacity on March 1, 1966.

"4. Failing to permit trial de novo."

In R. C.'s estate the appellants assert as a statement of points that the trial court erred in sustaining the appellees' motion for summary judgment against the appellants' petition and first claim for the following reasons:

"1. The Court sustained appellees' motion without any evidence being presented including as to disputed allegations of facts that decedent practiced force, duress and undue influence upon one Ruth Teichgraeber, deceased, who is alleged to have been incompetent and incapacitated and without mental capacity to transact business, make disposition of her property, or fully realize objects of her bounty for approximately eight years before her demise.

"2. The Court erred in failing to hear any evidence in violation of K. S. A. 59-618.

"3. The Court erred in sustaining appellees' Motion For Summary Judgment by reason of rulings made in the Estate of Ruth Teichgraeber, Deceased, in the District Court of Greenwood County, Kansas, Case No. 22,763."

It is readily apparent, if the trial court erred on the pivotal point heretofore stated, it erred on all points asserted by the appellants. For the reasons hereafter assigned we find the trial court erred on all of the points asserted by the appellants.

Ordinarily in the probate court, when a will is admitted to probate, the court appoints the named executor or an administrator with the will annexed and fixes the amount of his bond as required by law, if such is required. In fact, K. S. A. 59-2227 specifically provides that upon the admission of a will to probate, "the court *shall* appoint an executor or administrator with the will annexed."

K. S. A. 59-701 specifically requires the granting of letters testamentary or letters of administration with the will annexed. It provides:

"*Letters testamentary shall be granted to the executor,* if any is named in the will, if he is legally competent and shall accept the trust; *otherwise letters of administration shall be granted with the will annexed."* (Emphasis added.)

The foregoing statute was before this court for construction in the case of *In re Estate of Grattan,* 155 Kan. 839, 130 P. 2d 580. There the court held *the naming of an executor by a testator in his will should be treated by the courts as a part of his will—much as a devise or bequest should be treated.* In the opinion the court said:

"A difference should be noted in the authority of the court to appoint an executor and its authority to appoint an administrator of an intestate estate. In the appointment of an executor the authority of the court comes from the will and the statute (G. S. 1941 Supp. 59-701); in the appointment of an administrator the authority of the court comes wholly from the statute (G. S. 1941 Supp. 59-705). With respect to the appointment of an administrator our statute (G. S. 1935, 22-312), in effect prior to the enactment of the probate code, designated classes of persons having priority of rights of appointment, and although the imperative word 'shall' was used, this court in several cases held the probate court had a measure of discretion with respect to the appointment, governed by the thought of having a competent, well-qualified administrator. (*Brown v. Dunlap,* 70 Kan. 668, 79 Pac. 145.) In the new probate code the former sections of our statutes pertaining to this question were rewritten so as to make more definite, and perhaps enlarge, the discretionary power of the probate court in making the appointment (G. S. 1941 Supp. 59-705). *No such enlargement of the discretionary power of the court was made with reference to the appointment of an executor."* (Emphasis added.) (p. 850.)

In the opinion the court approvingly referred to *In re Estate of Betts,* 185 Minn. 627, 240 N. W. 904, 243 N. W. 58, where the Supreme Court of Minnesota construed a statute similar to ours, and held the statute to be mandatory even though the executor named in the will was a debtor or a creditor of the testator, *or had interests hostile to others interested in the estate.* Further in the *Grattan* opinion the court said:

"The well-established general rule is that one is 'legally competent' to act as an executor if he is legally competent to make a will; *but it appears always to have been the rule that peculiar and abnormal facts disclosed may make it clear that the person designated is not a suitable person.* (1 Bartlett's Kansas Probate Law and Practice, § 533, p. 545.)" (Emphasis added.) (p. 853.)

In Ruth's estate the petitioner Harold Forbes, who was named alternate executor in Ruth's will dated March 1, 1966, requested

upon the hearing to admit the last will and testament to probate that "letters testamentary be issued to Harold G. Forbes, 417 N. Main, Eureka, Kansas, as executor of said last will and testament of Ruth Teichgraeber, deceased." Both the order setting the matter for hearing on June 4, 1973, and the published notice for hearing on the petition, recited that the petition filed for the probate of Ruth's will requested "the appointment of Harold G. Forbes as executor" of said will.

While the allegations in the petition to admit the will of Ruth, dated March 1, 1966, to probate may have alerted the probate judge concerning the suitability of Mr. Forbes to serve as executor in Ruth's estate, the children of Ruth (appellants herein) did not appear, and the matter was not considered by the probate judge.

Had Mr. Forbes been *expressly appointed executor* in accordance with his request in his petition by the probate court on June 4, 1973, after admitting Ruth's will to probate, would the appellants have been required to appeal from the order appointing Mr. Forbes executor within 30 days from its entry, to effectuate a valid appeal within six months from the same order admitting the will to probate? We think not.

The executor named by a testate decedent in his or her will gains stature only if the validity of the will is upheld by the probate court, or if an appeal is taken, only upon final determination of the validity of the will. The executor can be appointed (subject to the provisions of K. S. A. 59-2407) only if the validity of the will is upheld. If the will is declared invalid, the named executor loses his status as the nominee of the decedent in such will and the directions of the testator regarding the executor are treated the same as the directions concerning the disposition of his property by bequest or devise in such will. That is, directions given by the decedent in a will which is declared invalid are held for naught, and his estate passes by intestate succession, unless another valid will is established to control the disposition of his estate.

It should be noted the probate court by its order on June 4, 1973, *did not expressly appoint Mr. Forbes executor or expressly refuse to appoint him executor.* The will of Ruth, dated March 1, 1966, was admitted to probate and the probate court *expressly found* "Harold G. Forbes was appointed to serve as executor of said last will and testament." The order merely denied letters testamentary to the executor named in the will of Ruth "due to the fact that

said deceased was the owner of no real or personal property at the time of her death." (See, K. S. A. 1974 Supp. 59-2287, analyzed infra.)

Although veiled, some of our decisions confirm that K. S. A. 1974 Supp. 59-2401 and 59-2404 have been construed, where an appeal is taken from an order of the probate court admitting a will to probate within the authorized statutory period (formerly nine months, now six months by amendment, L. 1972, ch. 215, § 20), not to require an additional appeal from *orders entered incidental to the admission of the will to probate* within the shorter period of 30 days. If an appeal from orders entered incidental to the admission of the will to probate, such as the appointment of an executor, is required, the time for appeal from an order of the probate court admitting a will to probate would for all practical purposes be reduced to 30 days. Clearly this was not the intention of the legislature when it enacted the probate appeal statutes.

The case of *In re Estate of Osborn*, 167 Kan. 656, 208 P. 2d 257, involved a petition to admit a will to probate, wherein an attempt was made to raise an issue concerning the validity of a postnuptial agreement. There the court was required to determine whether the probate court could, upon such a petition, proceed to adjudicate the validity of the postnuptial agreement at the same time and at the same hearing at which the will was admitted to probate. In the opinion the court said:

"The probate code contemplates that *the real purpose of the petition to probate is to determine whether the decedent died testate, to appoint a representative of the estate, and to deal with such other preliminary matters as are clearly incidental thereto.* However, it is not the function of the probate court, *upon a petition for probate of a will*, to adjudicate the rights of the heirs or determine the persons entitled to the estate. It cannot be said that the adjudication of the validity of the postnuptial release was incidental to the probate of the will. That was a matter which directly concerned the rights of the heirs and the determination of the persons entitled to the estate." (Emphasis added.) (p. 661.)

While the factual situation in the consolidated appeals presently before the court is distinguishable from that in the *Osborn* case, the significance of the decision in *Osborn* is that it *classifies the appointment of a representative of the estate as one of the matters incidental to the admission of a will to probate.*

This court has held in a proceeding to admit a will to probate that the inquiry is limited to the question whether such instrument is entitled to probate, and that prior to a determination of that

issue, orders related to proceedings incidental thereto are not *res judicata* (*In re Estate of Reed,* 157 Kan. 602, 606, 142 P. 2d 824, Syl. ¶ 3).

In the case of *In re Estate of Buehler,* 204 Kan. 830, 466 P. 2d 260, the act of a litigant in *qualifying as an executor under a will admitted to probate* did not constitute an acquiescence in the order admitting the will to probate *so as to bar his right of appeal from the order admitting the will to probate.* There two separate appeals were taken by the executor, who had duly qualified, to the district court from orders of the probate court denying admission of a 1960 joint will to probate, and admitting to probate a 1967 will and codicil. No appeal was taken by the executor named in the 1967 will from the order of the probate court appointing him executor.

On a hearing for the probate of a will the burden of proof is upon the proponent of the will to show: (1) The testamentary character of the instrument, (2) the testamentary capacity of the testator, and (3) the due execution of the will in accordance with the statutory requirements. (*In re Estate of O'Leary,* 180 Kan. 419, 304 P. 2d 547; see also *In re Estate of Harper,* 202 Kan. 150, 159, 446 P. 2d 738.)

We have been cited to no case, and our research has disclosed none, where appeal from an order appointing an executor, or from an order refusing to appoint an executor, within 30 days was required to perfect a valid appeal from the order admitting the will to probate within the statutory period required for such an appeal.

Based upon the foregoing authorities we hold the appeal taken in Ruth's estate by the appellants from the order of the probate court admitting Ruth's will to probate on June 4, 1973, was duly perfected within the statutory period of six months pursuant to K. S. A. 1974 Supp. 59-2401 and 59-2404, and that such appeal was sufficient to challenge the order admitting Ruth's will to probate and all matters considered by the probate court incidental thereto and covered by the order of June 4, 1973. Accordingly, none of the incidental orders or findings of the probate court in the June 4, 1973, order are *res judicata,* and the appeal from the order admitting Ruth's will to probate is not moot. As we shall presently disclose, the finding of the trial court that Ruth died owning no real or personal property upon which to administer remains an open question subject to further judicial inquiry.

The probate judge apparently relied upon K. S. A. 1974 Supp.

59-2287 when it entered its June 4, 1973, order admitting the March 1, 1966, will of Ruth to probate, and denied issuance of letters testamentary to the executor named in Ruth's will based upon a finding that Ruth was the owner of no real or personal property at the time of her death.

In 1965 the legislature of Kansas enacted a bill entitled: "An Act relating *to estates of certain decedents* supplementing the Kansas probate code, providing for the *dispensing with administration* in certain cases, and authorizing the probate court *to refuse letters of administration in such cases.*" (Emphasis added.) (L. 1965, ch. 353, §§ 1 to 4.) Section 1 of the act is headed *"Refusal of letters."* By reason of subsequent amendments in 1968, 1969 and 1970 the enactment now appears as K. S. A. 1974 Supp. 59-2287 to 59-2290, inclusive. (L. 1970, ch. 229, §§ 1 to 4.) Section 59-2287 provides in part:

"(*a*) The probate court in its discretion, may refuse to grant letters *in the following cases:*

"(1) When *the estate of the decedent is not greater in amount* than is allowed by law as exempt property and the allowance to the surviving spouse or minor children under K. S. A. 1969 Supp. 59-403.

"(2) When *the personal estate of the decedent does not exceed one thousand five hundred dollars ($1,500)* and there is no widower, widow or unmarried minor children, *any creditor of the estate may apply for refusal of letters* by giving bond in the sum of not less than the value of the estate. . . .

"(*b*) *Proof may be allowed* by or on behalf of the widower, widow, minor children or creditor before the probate court of the value and nature of the estate, and if the court is satisfied that no estate will be left after allowing to the surviving spouse or minor children their exempt property and statutory allowances, or that the personal estate does not exceed one thousand five hundred dollars ($1,500) *when application is made by a creditor, the court may order that no letters of administration shall be issued on the estate, unless, upon the application of other creditors or parties interested, the existence of other or further property is shown.*

"(*c*) *After the making of the order, and until such time as the same may be revoked, the surviving spouse, minor children or creditor may collect and sue for all the personal property belonging to the estate, if a surviving spouse or creditor, in the same manner and with the same effect as if he had been appointed and qualified as executor or administrator of the estate.* . . .

⁎ ⁎ ⁎ ⁎ ⁎

"(*f*) Any person who has paid funeral expenses or debts of decedent is deemed a creditor *for the purpose of making application* for the refusal of letters of administration under this section and is subrogated to the rights of the original creditor.

"(*g*) Whenever it shall be made to appear to the court that further proceedings in the administration of an estate pursuant to this section are un-

necessary, *the court shall enter an order terminating the administration of such estate. Such order* shall be made without notice, unless the court otherwise orders, and it *shall be to the effect that, unless further estate of the decedent be discovered. . . . If further estate of the decedent is discovered and administration is had thereon,* such administration shall not abrogate or invalidate or otherwise affect any right, title or interest in property transferred or vested pursuant to this section unless the court, for good cause shown, shall otherwise determine and order." (Emphasis added.)

Apparently the legislature decided summary closing of estates was not adequate as an economical method for *distributing assets of small estates without a net value in excess of the exempt property and allowances, or, if no surviving spouse or minor children are involved, the amount of $1,500.*

Assuming, without deciding, that the probate court properly invoked the provisions of the foregoing statute, does the statute alter prior case law construing the probate appeal statutes? For the reasons hereafter assigned we hold that it does not.

The basic purpose of 59-2287 is to provide an inexpensive, expeditious method *of administering estates that are shown to be within its scope.* (See, Smith, "The 1965 Legislature and the Law," 34 J. B. A. K. 185, 237 [1965]; and Harris, *Administration of Estates,* 14 K. L. R. 139, 141 [1965].) As we construe 59-2287 proceedings to administer estates shown to be within its scope are subject to conditions and limitations embraced within the enactment itself.

It must be noted the appeal statute K. S. A. 59-2401, while amended in other respects by L. 1965, ch. 346, § 48, *was not altered to permit an appeal from an order refusing to grant letters of administration* entered pursuant to 59-2287. We do not construe an order refusing to grant letters of administration under 59-2287 as a refusal to appoint a fiduciary. The statute designates the fiduciaries empowered to act. It provides "the surviving spouse, minor children or creditor" may serve in a fiduciary capacity "in the same manner and with the same effect as if he had been appointed and qualified as executor or administrator of the estate." (59-2287 [c].)

The other appeal statute, K. S. A. 59-2404, was amended in 1972 (L. 1972, ch. 215, § 20) to change the time from nine months to six months within which an appeal could be taken from an order admitting a will to probate. It has not been otherwise altered since the enactment of 59-2287.

As we construe 59-2287, a finding of the probate court that the

assets of a decedent are insufficient to warrant formal administration is subject to open for further judicial scrutiny, if assets are subsequently discovered or the existence "of other or further property is shown" "upon the application of other creditors or parties interested." (59-2287 [b].) The court may enter an order terminating the administration of such estate under the limited scope of 59-2287, "unless further estate of the decedent be discovered." It further provides: "If further estate of the decedent is discovered and administration is had thereon", meaning formal administration, such administration shall not affect vested property interests or transfers pursuant to the act, unless the court shall otherwise determine and order. (59-2287 [g].)

Under 59-2287 the case of *In re Estate of Johnson,* 180 Kan. 740, 308 P. 2d 100, relied upon by the appellees, has no application regarding the conclusive nature of findings upon which jurisdiction is based where an appeal is not taken within the time required.

The act contemplates the making of an application to the probate court for the refusal of letters of administration. (See, 59-2287 [a] [2], [b], and [f].) On the facts in this case there was no application made to the probate court that "no letters of administration" be issued pursuant to 59-2287. The named executor in Ruth's will, dated March 1, 1966, petitioned in Ruth's estate for the admission of Ruth's will to probate and that "letters testamentary be issued to Harold G. Forbes."

Except where title to real estate is affected, the act is silent as to any requirement for notice. (See, 59-2287 [d] [1].)

On the facts in this case, assuming the widower R. C., through his executor, made application to have the provisions of 59-2287 invoked for the refusal of letters of administration, and assuming further that it was proper for him to invoke the provisions of 59-2287 (a question we leave open), the statute affirmatively contemplates that the proof offered to show Ruth had no assets in her estate is subject to open for further judicial scrutiny by the probate court. The act does not contemplate that either the finding be conclusive or that an order refusing to issue letters of administration based thereon be a final order. (59-2287 [g].)

The foregoing discussion of 59-2287 is predicated upon the assumption that its provisions can be invoked where a decedent dies testate. Counsel for the respective parties have not seen fit to honor this court with an adequate brief concerning the impact of 59-2287 on established probate law, the appellants ignoring the statute en-

tirely, and the appellees devoting slightly more than one-half page to the statute in their brief filed in Ruth's case. On the issues presented by these consolidated appeals we find it unnecessary to decide whether 59-2287 has application to estates left by decedents dying testate. If it is ultimately determined the statute does have application to testate estates, the extent to which it may alter the application of K. S. A. 59-2227 and 59-701 as heretofore construed by this court must be determined.

Our concern over 59-2287 stems from prior decisions under the probate code which hold there is no absolute requirement that assets be known before an estate can be administered or letters testamentary issued. *In re Estate of Preston*, 193 Kan. 145, 392 P. 2d 922 is in point. There this court held a claim under an insurance policy constituted such an estate of a nonresident insured decedent as to justify the issuance of letters of administration. 21 Am. Jur., Executors and Administrators, § 41, p. 396 was cited. It held:

"The right to letters of administration in a state other than the domicile of the decedent does not, in all cases, depend upon the existence of tangible assets requiring administration. A mere claim or right to enforce some claim, whether legal or equitable, irrespective of its probable merits, is sufficient foundation for the issuing of letters of administration. Hence, it has been held that a right to letters of administration may be sufficiently predicated on a right of action, a pending action, or even a judgment recovered in favor of the decedent in his lifetime."

K. S. A. 1974 Supp. 59-2203 although dealing with nonresidence provides: "[P]roceedings may be had in any county wherein he left any estate to be administered as provided in section 2 [59-805] of this act." In 33 C. J. S., Executors and Administrators, § 20, pp. 898, 899, it is said:

"It is not necessary that the assets relied on as furnishing a basis for local administration should be of a tangible nature, but a mere claim or right of action arising or existing and enforceable within the jurisdiction is sufficient; and a bona fide claim will support a grant of administration even though it proves invalid or unenforceable after letters are issued. The term 'estate' as used in a statute relating to the granting of letters of administration includes all kinds of property which the deceased left at the time of his death."

A similar result was reached in *In re Estate of Brasfield*, 168 Kan. 376, 214 P. 2d 305. There a decedent died August 22, 1947, leaving an estate consisting entirely of clothing and personal effects which did not exceed $25 in value. That estate was insufficient to defray funeral and administration expenses. Eight months after decedent's

death tort creditors were allowed to file a petition asking for the appointment of a general administrator, and the court held:

"The provisions of the Kansas probate code require the appointment of an administrator for the estate of an intestate resident decedent when petitioned for by creditors of the estate even though its known assets appear to be inconsequential and of little value." (Syl. ¶ 2.)

This court reasoned that to hold creditors must exhibit demands in probate court and at the same time hold those same creditors, because known assets of the estate appear to be inconsequential, are to be denied an opportunity of ever establishing their claim *or attempting to bring assets into the estate to pay them* would lead to results so incongruous and unfair and so lacking in fundamental justice as to preclude any necessity for further discussion.

Another case on the point is, *In re Estate of Shultz*, 180 Kan. 444, 304 P. 2d 539. There it was held the probate court of Pratt County had jurisdiction to appoint an ancillary administrator with will annexed where the nonresident decedent's estate consisted of a damaged automobile valued at $75 and a tort claim.

The avenue of approach taken by the appellants in the probate court in these cases, consolidated on appeal, is to bring property into Ruth's estate by way of a claim filed in the estate of R. C., and show the will of Ruth dated March 1, 1966, is invalid and not entitled to probate because it was executed by Ruth at a time when she was mentally incompetent and incapacitated. If the appellants are successful on their approach and sustain their burden of proof on these matters, they must then show that Ruth died leaving a valid will executed while she was mentally competent, leaving her property in equal shares to them (as alleged), or, failing in this, that Ruth died intestate.

The appellees contend the claim filed by the appellants in Ruth's estate is a collateral attack upon the order of the probate court entered June 4, 1973, in the estate of Ruth, citing *In re Estate of Johnson*, supra, and *In re Estate of Bertrand*, 188 Kan. 531, 363 P. 2d 412.

The appellants contend they allege ultimate facts in their first claim filed in the estate of R. C. which raises an issue as to whether R. C. in his lifetime held the assets of Ruth in constructive trust for the benefit of Ruth, such assets now being in the estate of R. C. To support their constructive trust theory the appellants cite *In re Estate of Johnson*, 176 Kan. 339, 270 P. 2d 293; *Grubb*,

*Administrator v. Grubb,* 208 Kan. 484, 493 P. 2d 189; and *Winsor v. Powell,* 209 Kan. 292, 497 P. 2d 292.

The situation presented herein was considered in *Hildenbrand v. Brand,* 183 Kan. 414, 327 P. 2d 887. The rules applicable herein were succinctly stated in the first three syllabi of that opinion as follows:

"1. Generally speaking, when the purpose of an action or claim is to get something out of an estate of a decedent, the probate court has exclusive original jurisdiction of the matter and the action or claim must be filed in that court.

"2. Generally speaking, when the purpose of an action or claim is to bring something into an estate of a decedent, that is, when an estate has a claim which its personal representative is attempting to enforce, the action is to be filed in the district court or some other court of competent jurisdiction.

"3. The general rule mentioned in the preceding paragraph of this syllabus is subject to the following qualification and exception: When one estate seeks to recover from another estate—that is, attempts to get something out of it—the action or claim must be filed in the probate court notwithstanding that the successful enforcement thereof results in bringing something into the claimant estate, the reason being that the action or claim seeks to get something out of defendant estate."

Here the appellants, for and on behalf of the estate of Ruth, are attempting to get something out of the estate of R. C., and their action or claim was filed in the probate court in R. C.'s estate within the period of the non-claim statute. (K. S. A. 1974 Supp. 59-2239.) If their claim is successfully enforced it will result in bringing assets into the estate of Ruth. The claim was properly filed in the probate court in the estate of R. C. because it seeks to get something out of R. C.'s estate.

The claim filed by the appellants in the estate of R. C. is not a collateral attack upon the judgment of the probate court entered June 4, 1973, in Ruth's estate. The appellants have a valid appeal pending from the order of the probate court admitting Ruth's will to probate. Other incidental findings and orders entered by the probate court on June 4, 1973, in Ruth's estate are not *res judicata.*

The fact that the appellants will be required to prove essentially the same facts to show the invalidity of Ruth's will dated March 1, 1966, and the claim filed in the estate of R. C., is not controlling. The issue in one case is the mental capacity of Ruth to execute a valid will, and in the other the overreaching of R. C. to acquire the property of Ruth at a time when Ruth was mentally incompetent and incapacitated to protect herself.

For the reasons heretofore stated the district court erred in sustaining the appellees' motion for summary judgment on the first claim in the estate of R. C.

The judgment of the lower court in each of the cases, consolidated here on appeal, is reversed.

FROMME, J., not participating.