*In re* the matter of the Estate of Robert R. Petty, Deceased. KATHLEEN PETTY, Widow, TERESA FOLEY and RICHARD PETTY, Adult Children, all of the Heirs of the Decedant, *Appellants,* v. EDWARD J. WHITE, the Named Executor in the Will of Robert R. Petty, Deceased, *Appellee.*

AND

No. 51,738

EDWARD J. WHITE, Executor named in the Will of Robert R. Petty, Deceased, *Petitioner,* v. HON. JOHN L. WHITE, Associate District Judge, First Judicial District, Division No. 1, Leavenworth County, Kansas, KATHLEEN PETTY, RICHARD A. PETTY, TERESA FOLEY, and ROBERT W. LOYD, Special Administrator of the Estate of Robert R. Petty, Deceased, *Respondents.*

(608 P.2d 987)

Opinion filed April 5, 1980.

*Edward M. Boddington, Jr.,* of Boddington and Brown, of Kansas City, argued the cause for Teresa Foley and Richard Petty, and *Albert E. Grauberger,* of Kansas City, argued the cause for Kathleen Petty, and were on the briefs for the appellants.

*David K. Fromme,* of Weeks, Thomas, Lysaught, and Mustain, Chtd., of Overland Park, argued the cause, and *Jon C. Christlieb,* of the same firm, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This case is a consolidation of two separate actions: First, an appeal from an order of the district court of Leavenworth County admitting a will to probate and appointing as executor the person designated in the will and, second, an original proceeding in mandamus brought by the named executor against the district judge for an order directing the judge to accept the petitioner's oath as executor for filing, to issue letters testamentary to the petitioner, and to compel the special administrator to turn over all estate property to the petitioner.

The facts in the case are not greatly in dispute and essentially are as follows: The decedent is Robert R. Petty who died on April 19, 1979. The decedent was survived by his second wife, Kathleen Petty, and by two adult children, his daughter, Teresa Foley, and his son, Richard Petty. On November 21, 1975, Robert R. Petty and Kathleen Petty, then Kathleen Shepard, in contemplation of marriage entered into an antenuptial agreement which limited the rights of each in the property of the other. They were subsequently married and remained married until the death of Robert R. Petty in an automobile collision on April 19, 1979. On August 17, 1976, Robert R. Petty executed a will which provided that Kathleen Petty, as a widow, was to receive $50,000 and the family automobile while the son and daughter were to receive the

remainder of the estate. Robert R. Petty was a building contractor and sole shareholder of Westside Construction Company, Inc., a successful construction business. Over the years, Edward J. White, a lawyer, had represented Petty in certain business matters, including the drafting of several wills at various times. In the will dated August 17, 1976, Edward J. White was designated to be the executor with broad powers to sell and dispose of estate assets.

Following the death of Robert R. Petty, a petition to probate the will of Robert R. Petty was filed on April 25, 1979, by White, as named executor, in the district court of Leavenworth County. On April 27, 1979, the widow and two children, as all of the named heirs and devisees under the will, filed a petition alleging that Edward J. White was not competent to act as the executor of the estate. They objected to his appointment and requested that the three of them be appointed coadministrators, C.T.A., and that White be restrained from collecting or disposing of any of the estate assets or from interfering with the construction business. Kathleen Petty, as widow, also filed an election to take against the will and by intestate succession. A hearing was held on April 30, 1979, following which the court ordered all parties restrained from collecting or disposing of any assets of the estate. The court then appointed Robert W. Loyd as special administrator of the estate. The special administrator immediately took possession of all estate assets. Thereafter, the heirs filed objections to the probate of the will and petitioned the court to have the estate administered in accordance with a family settlement agreement which provided for an agreed distribution of the estate and for abrogation of the will and of the antenuptial agreement and for the appointment of Commercial National Bank as administrator instead of Edward J. White.

After several hearings, the district court on November 20, 1979, entered judgment admitting the will of Robert R. Petty to probate, appointing Edward J. White as executor, and denying the petition for an order to administer the estate under the family settlement agreement. The court then ordered that the appointment of Edward J. White should be stayed pending the appeal. This left the special administrator in the position of administering the estate while the appeal was pending. The heirs appealed to the Court of Appeals. On December 17, 1979, Edward J. White filed an origi-

nal proceeding in the Supreme Court for a writ of mandamus to require the district court to accept the oath of Edward J. White, as executor, to issue letters testamentary to Edward J. White, and to issue an order requiring the special administrator to turn over all estate property to Edward J. White as named executor. The Supreme Court accepted jurisdiction of the mandamus action and immediately transferred the direct appeal of the heirs to the Supreme Court, so that the heirs' appeal and the mandamus action could be disposed of in a single proceeding. We will consider first the issues raised on the appeal and then the issue raised in the proceeding for mandamus.

The first point raised by the heirs on their appeal is that the will of August 17, 1976, was not properly executed and should not have been admitted to probate because the will was not properly signed at the end as required by K.S.A. 59-606, which provides as follows:

"**59-606. Execution and attestation; self-proved wills and codicils; affidavits; form.** Every will, except an oral will as provided in K.S.A. 59-608, shall be in writing, and signed at the end thereof by the party making the same, or by some other person in the presence and by the express direction of the testator and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard the testator acknowledge the same. Such will, at the time of its execution or at any subsequent date during the lifetimes of the testator and the witnesses, may be made self-proved, and the testimony of the witnesses in the probate thereof may be made unnecessary by the acknowledgments thereof and the affidavits of the testator and the attesting witnesses, each made before an officer authorized to take acknowledgments to deeds of conveyance and to administer oaths under the laws of this state, such acknowledgments and affidavits being evidenced by the certificate, with official seal affixed, of such officer attached or annexed to such will in form and contents substantially as follows:

STATE OF KANSAS      )<br>
               )   ss.<br>
COUNTY OF         )

"Before me, the undersigned authority, on this day personally appeared _____, _____, and _____, known to me to be the testator and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and, all of said persons being by me first duly sworn, said _____, testator, declared to me and to the said witnesses in my presence that said instrument is his/her last will and testament, and that he/she had willingly made and executed it as his/her free and voluntary act and deed for the purposes therein expressed; and the said witnesses, each on his/her oath stated to me, in the presence and hearing of the said testator, that the said testator had declared to them that said instrument is his/her last will and testament, and that he/she executed same as such and wanted

each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of each other and in the presence of the testator and at his/her request, and that said testator at that time possessed the rights of majority, was of sound mind and under no restraint.

_____
(Testator)

_____
(Witness)

_____
(Witness)

"Subscribed, acknowledged and sworn to before me by _____, testator, and _____ and _____, witnesses, this _____ day of _____, A.D. _____.

(SEAL)

(Signed) _____

_____
(Official capacity of officer)

"A self-proved will, unless contested, shall be admitted to probate without the testimony of any subscribing witness, but otherwise it shall be treated no differently than a will not self-proved. A self-proved will may be contested or be revoked, or be amended by a codicil in the same fashion as a will not self-proved. A codicil or the consent to take under the will by the spouse may be self-proved in the same manner as a will may be self-proved."

The pertinent portions of the will dated August 17, 1976, admitted to probate, omitting paragraphs making specific bequests, are as follows:

"LAST WILL AND TESTAMENT

OF

ROBERT R. PETTY

"I, Robert R. Petty, the undersigned Testator hereby declare that I am a resident of Kansas City, Kansas, and do hereby make, publish and declare this as and to be my Last Will and Testament, hereby revoking any and all former Wills and Codicils thereto, if any, heretofore by me made.

. . . .

"IN WITNESS WHEREOF, I to this, my LAST WILL AND TESTAMENT, consisting of two (2) pages, having subscribed my name of on this 17th day of Aug., 1976.

"/s/ Robert R. Petty

ROBERT R. PETTY

"STATE OF KANSAS

"COUNTY OF WYANDOTTE, SS:

"Before me, the undersigned authority, on this day personally appeared Robert R. Petty, Edward J. White and Elizabeth A. Couts, known to me to be the Testator and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and, all of said persons being by me first duly sworn, said Robert R. Petty, Testator, declared to me and to the said witnesses in my presence that said instrument is his Last Will and Testament,

and that he had willingly made and executed it as his free and voluntary act and deed for the purposes therein expressed; and the said witnesses, each on their oath stated to me, in the presence and hearing of said Testator, that the said Testator had declared to them that said instrument is his Last Will and Testament, and that he executed same as such and wanted each of them to sign it as a witness; and upon their oaths each witness of each other in the presence of the Testator and at his request, and that said Testator at that time possessed the rights of majority, was of sound mind and under no restraint.

"/s/ Robert R. Petty
ROBERT R. PETTY

"/s/ Edward J. White
Witness
"/s/ Elizabeth A. Couts
Witness
"Subscribed, acknowledged and sworn to before me by Robert R. Petty, Testator, Edward J. White and Elizabeth A. Couts, witnesses, this 17th day of August, 1976.
"/s/ Deborah Anne Haynes
Notary Public"

The heirs contend that the will of August 17, 1976, is a nullity because it does not contain the usual attestation clause with the signatures of the subscribing witnesses. K.S.A. 59-606 does not require the attestation clause to be in any particular form. The only requirement is that every will "shall be in writing, and signed at the end thereof by the party making the same, or by some other person in the presence and by the express discretion of the testator and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard the testator acknowledge the same." From the will, as depicted above, it will be observed that the two subscribing witnesses signed the sworn "attestation" statement, reciting that the testator executed the will in their presence and that they subscribed to the same as witnesses in the presence of each other and in the presence of the testator and at his request. The mere fact that the attestation, in form, resembled an affidavit, does not destroy its validity.

Here the sworn statement was on the same page of paper as the last article of the will and may be said to have been incorporated into the will by words of reference therein. The evidence is undisputed that the will was signed by the testator, Robert R. Petty, in the presence of each of the subscribing witnesses and that they signed the will, as subscribing witnesses, at his request

and in his presence and in the presence of each other. It is also undisputed that the testator was mentally competent to execute a will. The Oklahoma Supreme Court in *In re Estate of Cutsinger,* 445 P.2d 778 (Okla. 1968), had before it the precise question presented here and found that the so-called "self-proving clause" signed by the testator and by the subscribing witnesses was legally sufficient to satisfy the requirements of a similar Oklahoma statute (Okla. Stat. tit. 84, § 55 [1965 Supp.]). It has been the policy of this court to uphold wills if the form of the will substantially complies with the requirements of the statute. For example, see *In re Estate of Ellis,* 168 Kan. 11, 210 P.2d 417 (1949). We have concluded that, under the circumstances of this case, where the subscribing witnesses signed "a self-proving" sworn statement which appeared on the last page of the will after all of the dispositive provisions, the signatures were sufficiently at the end of the will to comply with the provisions of K.S.A. 59-606. It follows that the trial court was correct in reaching the conclusion that the will was executed in compliance with that statute and could be admitted to probate.

The second point raised by the heirs on the appeal is that the family settlement agreement before the court, entered into by all of the heirs and devisees of the decedent, abrogated the will and thus the trial court erred in refusing to order administration to proceed in accordance with the family settlement agreement. The identical issue was before this court in *In re Estate of Harper,* 202 Kan. 150, 446 P.2d 738 (1968). In syllabus ¶ 6 of *Harper,* this court held as follows:

"In a probate proceeding on a petition for probate of a will, the inquiry is limited to the single question whether such instrument is entitled to probate. A family settlement agreement executed by all the beneficiaries under the will and filed in the probate court to withhold the will from probate is not a valid or proper defense to that probate proceeding, and the probate court lacks power and authority at the hearing of such petition to approve such an agreement and thereupon determine the rights of the heirs at law entitled to the estate, or determine the administration of the estate in a manner different than that provided in the will. Such beneficiaries are interested parties in the estate and may at a proper time commence a probate proceeding for the approval of the family settlement agreement by the probate court."

*Harper* was decided by a four-to-three decision of the Supreme Court. We have carefully reconsidered the issue and concluded that the rule of *Harper* should be adhered to. As noted in *Harper,*

the pertinent statutes, K.S.A. 59-618, 59-620, and 59-621, express the legislative intent that the will of every person shall be offered for probate and that there is a clear public policy in establishing every legally executed will. Although family settlement agreements are favored by the law and beneficiaries of a will have a right to agree among themselves for a distribution of the estate contrary to the distribution made under the will, a district court should not determine the validity of the family settlement agreement at the time of the hearing on the petition to admit the decedent's will to probate. A family settlement agreement should be submitted to the court' at a later time and its validity then determined. Based on our decision in *In re Estate of Harper*, 202 Kan. 150, we have concluded that the trial court did not err in admitting the will dated August 17, 1976, to probate as the last will and testament of Robert R. Petty.

The third point raised by the heirs is that, under the undisputed factual circumstances shown in this case, the district court abused its discretion in appointing Edward J. White as executor over the objection of all of the heirs-devisees of the decedent. Simply stated, it is the position of the heirs that White, by his actions following the death of Robert R. Petty, has caused so much antagonism and friction between himself and all of the heirs of the estate, that the estate can not be efficiently and fairly administered by him. White, as the designated executor, contends, in substance, that the district court had no discretion whatsoever to deny his appointment as executor in view of existing Kansas case law. White relies on *In re Estate of Snyder*, 179 Kan. 252, 294 P.2d 197 (1956); *In re Estate of Smith*, 168 Kan. 210, 212 P.2d 322 (1949); and *In re Estate of Grattan*, 155 Kan. 839, 130 P.2d 580 (1942).

*In re Estate of Grattan* involved a controversy over the appointment of a person designated in the will as executor whose appointment was opposed by the heir and beneficiaries under the will. There was no question raised as to the capacity of the testator to execute the will or that the will was in fact the last will and testament of the testator. In *Grattan*, we held that when a testator in his will names an executor, *normally* the court has no discretion respecting the appointment, if the executor so named is legally competent and will accept the trust. The court stated that the naming of an executor by a testator in his will should be

treated by the court as a part of his will—much as a devise or bequest should be treated. The court relied on the provisions of G.S. 1941 Supp. 59-701, which provided in substance that, when a will is admitted to probate, letters testamentary shall be granted to the named executor, if he is legally competent and shall accept the trust. The court, in the opinion, discussed the statutes and court decisions of many states and made the following statement:

"The well-established general rule is that one is 'legally competent' to act as an executor if he is legally competent to make a will; but it appears always to have been the rule that peculiar and abnormal facts disclosed may make it clear that the person designated is not a suitable person." p. 853.

At the hearing before the trial court in *Grattan,* no one contended that the named executor Ernst F. Pihlblad was not legally competent to make a will or to act as executor. The evidence disclosed that Dr. Pihlblad was a man of high standing in his community as an educator and theologian and that no one attributed any bad motives to him. There is nothing in the opinion to indicate any misconduct on the part of the proposed executor which would have justified the trial court in finding that Dr. Pihlblad was not fully competent to act as executor. There was, likewise, no substantial evidence to establish that he was not a suitable person to serve as executor. Under the circumstances, the trial court erred in refusing to appoint as executor the person designated by the testator in his will.

*Grattan* is cited in *In re Estate of Smith,* 168 Kan. 210, but that case is of no assistance here because there was no contention that the designated executor was not qualified or a suitable person to serve in that capacity. *Grattan* is also cited and relied on as a basis of the decision in *In re Estate of Snyder,* 179 Kan. 252. In *Snyder,* the two heirs of the testatrix, Isabelle Snyder, strongly objected to the appointment as executor of James N. Snyder, an attorney from Leavenworth who was the stepson of the testatrix and son of the sole beneficiary under the will who was deceased. Snyder was also the executor of the estate of his father, Charles Snyder, and was adversely interested, both individually and as his father's executor, to the interests of his stepmother's estate and her heirs. The heirs contended that, during the lifetime of the deceased, the proposed executor had been antagonistic to Isabelle's welfare and had denied to her the possession and enjoyment of her property and the income therefrom. They further contended that, as exec-

utor of his father's estate, he was asserting claims to substantially all of the assets of Isabelle's estate and, therefore, he was not a suitable and proper person to serve as executor of her estate. These allegations were set forth in the answer filed by the heirs. James N. Snyder, as petitioner, filed a motion for judgment on the pleadings for the reason that the answer failed to state a defense as shown on its face. The trial court sustained his motion and ordered that the will be admitted to probate and that James N. Snyder be appointed. The heirs appealed to the Supreme Court which affirmed the appointment of James N. Snyder as executor of Isabelle Snyder's estate. The Supreme Court took a hard position in its interpretation of the holding in *Grattan* and rejected the contention of the heirs of Isabelle Snyder that the interests of James N. Snyder, as executor of Charles Snyder's estate, were so antagonistic to the interests of Isabelle Snyder's estate that he was an unsuitable person to serve as executor of both estates. The court discussed *Grattan* in some depth and held that when a testator in his will names an executor, normally the court has no discretion respecting the appointment if the executor so named is legally competent and will accept the trust. The court noted that, if at any time it appeared during the administration of the estate that James N. Snyder's interests were actually antagonistic to the interests of the estate, then on proper application, a special administrator may be appointed. The essence of the opinion in *Snyder* is that, no matter how antagonistic the proposed executor might be to the interests of the estate, if he is legally competent and will accept the trust, he must be appointed. Then, if his antagonism is later expressed in some way, a special administrator at that time may be appointed.

The trial court in the present case apparently relied on *Grattan* and *Snyder* in deciding that it had no discretion except to appoint Edward J. White as executor. Such a result was clearly required by the decision of the court in *Snyder.* We have concluded that the opinion in *Snyder* unduly limits the discretion of a district court in considering the appointment of a proposed executor where peculiar and abnormal facts make it clear that the person designated is not a suitable person to act as executor. In *Grattan,* the general rule was recognized that one is legally competent to act as an executor if he is legally competent to make a will. However, in *Grattan,* this general rule was qualified by the

condition that a trial court is not required to name a designated person as executor where peculiar and abnormal facts are shown which make it clear that the person designated is not a suitable person.

We reject the holding in *Snyder* which would require a district court to appoint a designated person as executor no matter how antagonistic he might be toward the interests of the estate and the heirs and later, if such antagonism is expressed in some way, then order a special administrator to be appointed. We approve the rule stated in *Grattan* that when a testator in his will names an executor, *normally* the court has no discretion respecting the appointment, if the executor so named is legally competent and will accept the trust. However, as stated in *Grattan,* a district court should refuse to appoint a designated executor where peculiar and abnormal facts are disclosed which make it clear that the person designated as an executor is not a suitable person. If the evidence is clear that a person designated is not a suitable person to serve as executor, then he should not be appointed and the administration of the estate should be undertaken by a special administrator.

We wish to make it clear that the mere fact the heirs of the testator have a feeling of hostility toward the designated executor and do not want him appointed is not alone a sufficient reason for a district court to refuse to appoint the designated person. In some cases, the testator may recognize that dissension and division exist among his heirs and, as a result, intentionally designates a person as executor who has the fortitude to administer his estate, even in the face of such animosity. Where, however, the designated person is in a position or has acted in a manner antagonistic toward the interests of the estate or the heirs in a way indicating that his administration of the estate would probably result in prolonged and unnecessary difficulty or expense, then such a person should not be appointed as executor. The courts have a duty to see that estates are administered in such a way as to secure a just, speedy, and inexpensive determination of the proceeding.

After carefully considering the evidence presented at the hearing on the appointment of an executor in this case, we have concluded that it was an abuse of discretion for the trial court to appoint Edward J. White as executor. The trial court, at the

conclusion of the hearing, made a specific finding that White had conducted himself in such a manner as to irritate the heirs and the decedent's business associates and found specifically that White had conducted himself in an arrogant manner causing conflict with the heirs. There is plenty of evidence to support these findings of fact. We have concluded that the heirs are correct in their position that the named executor, by his actions, had caused such dissension and conflict between himself and all the heirs that the estate cannot be effectively and efficiently administered by him and that the best interests of the estate and of the heirs require the appointment of an administrator, C.T.A. It is clear from the testimony that, on the Friday following the death of Robert R. Petty, White presented himself at the corporate offices of Westside Construction Company and represented himself as having full and complete control of the business. Such power had not been granted by any court order. He cleared out the personal effects of Mr. Petty's desk, none of the heirs or beneficiaries being present at that time. The evidence indicated that White was reluctant to show and disclose to the heirs the items removed from the desk. Later, White represented himself as a member of the board of directors of the construction company, when he clearly was not a member of the board. He made statements that the business had not been run properly and that he intended to change the way the business was run. He told the corporate accountant not to give any information about the business to the heirs. It should be noted that White's appearance at the corporate offices was the day before the funeral. Kathleen Petty, widow of the decedent, testified that, at the funeral home, White interfered with the funeral arrangements. White later came by the family home and, according to the widow, advised her that she was now a widow and out of everything, that she would have to change her lifestyle, and that, as of the first of May, she would be responsible for her own expenses. White indicated that he had total control of the construction company, of the property, of the estate, of the family home, of everything. White's actions and attitude were established by the testimony of not only the heirs but also employees of the business who had no interest in the estate. All of the heirs testified that there was no way the heirs could get along with White, if he were appointed as executor.

On this testimony, we have concluded that the trial court

abused its discretion in appointing Edward J. White as executor of the estate. In our judgment, sufficient peculiar and abnormal facts were disclosed by the evidence to make it clear that White was not a suitable person to handle the estate. Under the provisions of K.S.A. 59-704, the powers of a named executor before letters are granted are limited as follows:

"**59-704. Powers of executor before letters granted.** No executor named in a will shall, before letters testamentary are granted, have any power to dispose of any part of the estate of the testator, except to pay reasonable funeral expenses, nor to interfere in any manner with such estate, further than is necessary for its conservation."

Here the designated executor went beyond his statutory authority and acted in a manner evidencing an arrogant and callous disregard for the feelings of the testator's widow and children. We further note that, although the heirs testified that they had entered into a mutually satisfactory family settlement agreement, White's attorney indicated an intention of litigating its validity and possibly using the antenuptial agreement between the decedent and the widow as a means of upsetting the family settlement agreement. Furthermore, it is quite apparent that White intended to take the major role in the management of the construction company, although arrangements had been made for its operations to be supervised by Richard Petty and Larry Meadows, a qualified construction contractor and the decedent's business associate and former general superintendent. At the time of the hearing, conflicts had already arisen as to who was to run the business. It seems obvious to us that considering White's attitude, the prospects were excellent for prolonged and expensive litigation which would delay the closing of the estate to the detriment of the heirs. From all of the factual circumstances, we can reach no other conclusion than that the district court abused its discretion in appointing Edward J. White as executor of the estate.

The only issue raised in the mandamus action may be stated as follows: Where the district court has found the designated executor to be legally competent and has appointed him over the objection of the heirs, is the designated executor entitled as a matter of law to administer the estate during the pendency of an appeal to an appellate court from the order of appointment? White contends that, having been appointed executor by the trial court, it was error for the trial court to stay the effect of the order

of appointment until the appeal had been determined. We have concluded that the trial court's order staying the order of appointment of White as executor was a permissible exercise of the court's discretion. *In re Estate of Teichgraeber,* 217 Kan. 373, 537 P.2d 174 (1975), holds that the executor named by a testator decedent in his will gains stature only if the validity of the will is upheld by the probate court, or if an appeal is taken, only upon final determination of the validity of the will. We also note *Hutchinson v. Pihlblad,* 157 Kan. 392, 395, 139 P.2d 835 (1943), where an appeal was taken to the Supreme Court from an order appointing an executor and this court held, in substance, that an appeal from an order appointing an executor does not revoke the order of appointment but only *suspends* its operation after appeal is taken and until it is determined. We cannot say that the trial court abused its discretion in staying the order of appointment of Edward J. White as executor until the appeal had been determined by this court.

For the reasons set forth above, the petition for a writ of mandamus in Case No. 51,738 is denied. The judgment of the district court on appeal in Case No. 51,406 is reversed and that case is remanded to the district court with directions to set aside the appointment of Edward J. White as executor of the estate and to appoint an administrator C.T.A. for the estate.

FROMME, J., not participating.

MILLER, J., dissenting and concurring: Under the circumstances disclosed by the record in this case, I respectfully dissent from Syllabus ¶ 2 and the corresponding portions of the opinion. I think the rule of *In re Estate of Harper,* 202 Kan. 150, 446 P.2d 738 (1968) should be modified. Otherwise I heartily concur with the majority opinion.